## CARDELL v. TENNESSEE ELECTRIC POWER CO.
### No. 7658.

Circuit Court of Appeals, Fifth Circuit.
Nov. 14, 1935.

Reuben R. Arnold, of Atlanta, Ga., for appellant.

G. E. Maddox, of Macon, Ga., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges..

HUTCHESON, Circuit Judge.

This appeal is from a judgment on a directed verdict. The suit was for damages for the negligent killing of plaintiff's husband in a collision between his truck and a bus owned by defendant.

Plaintiff pleaded that while plaintiff's decedent, in the exercise of due care, was driving his truck along a paved public highway in the state of Tennessee, some distance in the rear of and following the defendant's bus, the bus suddenly and negligently, without warning or apparent reason therefor, turned to the left and came to a stop on the pavement so suddenly and so violently that plaintiff's decedent, though in the exercise of due care, could not avoid a collision with it, resulting in the wrecking and overturning his truck and its and his destruction by fire.

In addition to the negligence in fact thus relied on, appellant pleaded and relied as negligence in law, on section 2690, Tennessee Code of 1932.[1]

---

Note 1. "(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main-traveled portion of such highways; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle shall be obtained from a distance of two hundred feet in each direction upon such highway.

"(b) Whenever any peace officer shall find a vehicle standing upon a highway in violation of the provisions of this section, he is authorized to move such vehicle or require the driver or person in charge of such vehicle to move such vehicle to a position permitted under this section.

"(c) The provisions of this section shall

The District Judge, of the opinion that the statute quoted had no application, sustained defendant's demurrer to so much of the petition as pleaded it. This ruling was duly excepted to and error assigned on it.

Answering to the merits, defendant alleged that the accident occurred because, while its bus was slowing down for a passenger, the truck driven by plaintiff's decedent came up at a rapid rate of speed and recklessly and negligently ran into the rear end of the bus.

It further alleged that at the time the truck was struck the bus was slowing down, preliminary to a stop for a passenger some distance ahead, and that it had not yet come to a full stop. That its bus was brilliantly lighted; that the road where the collision occurred was straight for a half mile or more, and that if the driver of the truck had been in the exercise of any care whatever he could and should have seen the bus in front of him, and should have seen it was slowing down in plenty of time to avoid striking it. That the truck was far enough behind the bus, when the bus commenced to slow down, for it to have stopped before reaching the bus, had the driver exercised any care whatever, but that no effort was made to slow the truck down or pass the moving bus until it was too late to avoid the collision, and that it occurred solely because of his negligence. In addition, it pleaded that the truck was, in violation of the statutes of Tennessee, going at more than 35 miles an hour at the time of the collision.

On these pleadings the case went to trial. Plaintiff offered the testimony of three eyewitnesses, Rogers, Jay, and Bolden. The first two were in Rogers' car coming up behind, and traveling faster than the truck and bus. In the way of overtaking and passing truck and bus they were in a position as they came up to see, and did see them both. They saw what each was doing and what occurred before and just at the time of the collision. Rogers' testimony is that when he first saw the two vehicles the bus was some 75 or 100 feet ahead of the truck, when they went up the grade toward the scene of the accident, the truck was gradually gaining on the bus. "I was running 40 or 50 miles an hour and was getting right smart closer. At the time of the collision I would say I was 100 to 125 feet behind the truck. I was running about 40 or 45 miles an hour and the bus and truck were each making about the same speed, 30 miles an hour. From the time I first sighted them I made up almost half the distance between them and me. As to noticing any trouble, I saw a slight shift of the lights of the front vehicle toward the center of the road, and immediately a second later, the truck shifted and the crash was on. The front vehicle made a turn to the left, a sudden turn. The truck then shifted immediately to the left. The lights of the bus shifted to the left and then the truck made a full turn." He testified he did not see the bus stop. He could not see any effort to stop; he did not notice the bus slow down. It looked like as if there was a shifting of lights down on the edge of the road.

Jay, sitting in the back seat of Rogers' car, testified substantially the same as he did as to the speed of the vehicles and their distance apart. He further testified: "The first thing I noticed I saw the red back light of the bus show up; that signalled stop. I saw the stop light flare up suddenly. When it did the truck light swerved to the left. Immediately the back light lit up the truck swerved to the left. I did not see the driver of the bus make any signal before the stop light appeared. I was facing the bus. The first thing I noticed was when the red stop light went on on the bus. At the time the stop light went on the truck was about 50 feet behind the bus. As to whether the bus slowed up I could not say. I saw the stop light go on and the bus swerve to the left."

The other eyewitness, Bolden, lived on the highway at about the place where the collision occurred. He testified positively that he was standing on his front porch watching the bus come up when he saw it stop suddenly and turn to the left, throwing the light right on him; that it stopped right in the center of the concrete about one foot this side of

not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

his stone wall. "I saw it was a sudden stop by the way the bus threw the passengers; it stopped quickly. The truck was about 50 or 75 feet behind the bus and the boy there did not want to hit it, I reckon, and he went to make this turn and he side-swiped the bus."

This witness was subjected to a rigorous cross-examination on many matters. He was also examined by the court. These examinations did develop some discrepancies on matters other than the stopping of the bus and what occurred then. There was no departure or variance from the material part of his testimony as to the sudden stopping of the bus and as to the accident itself. His testimony throughout was positive that the bus did not slow down and then stop, but that it stopped quickly and suddenly. That from the time the brake went on the bus it did not go any distance.

Other witnesses were offered as to other matters in the case, as to which there was no real dispute, in corroboration of the eyewitnesses' testimony as to the physical situation and the facts of and surrounding the accident.

At the conclusion of plaintiff's evidence the defense moved for a directed verdict on the grounds (1) that the evidence adduced is insufficient to show any negligence on the part of the defendant as charged in the petition; (2) that the undisputed evidence of plaintiff's witnesses shows that plaintiff's husband was guilty of contributory negligence, which proximately caused or contributed to his death; and (3) that the evidence shows unquestionably that by or in the exercise of ordinary care he could have avoided the collision in which he lost his life. The court sustained the motion and directed a verdict for defendant.

Appellant urges that this is the simple case of a suit for damages on the ground of negligence sufficiently pleaded and proven to take her case to the jury. Appellee on its part argues that the only evidence at all pointing to fault on its part is that of Bolden, and that this was so incredible in itself and so discredited by his testimony on cross-examination as to deprive it of any weight. Citing many authorities, it argues that it is the duty of the following vehicle to watch out for the vehicle in front, and that in a head-end collision there is a heavy burden upon the following vehicle to show that it was without fault. It argues that the evidence not only fails to sustain that burden, but shows that the proximate cause of the collision was the want of care on the part of plaintiff's decedent in following so closely behind the bus as to make collision with it certain in the event it should slow or stop.

Appellant, insisting that who was at fault in a head-end collision must, just as in the case of any other collision, be determined by the facts of each case, urges that here is a simple case of negligence sufficiently alleged and sufficiently proven to take it to the jury. That that negligence is made out by the proof of the sudden slowing, the sudden swerving, to the left, and the sudden stopping of the bus on a public traveled highway without sufficient warning or signal to those following as to what it intended to do. She urges that she not only proved this by Bolden, but she corroborated his testimony by that of two other eyewitnesses. She insists that whether Bolden's testimony as he gave it was credible, whether on the whole case the defendant was or was not negligent, the plaintiff contributorily negligent, was for the jury.

We agree with appellant. All drivers of vehicles using the highways are held to the exercise of due care. A leading vehicle has no absolute legal position superior to that of one following. Each driver must exercise ordinary care in the situation in which he finds himself. The driver of the leading vehicle must exercise ordinary care not to stop, slow up, nor swerve from his course without adequate warning to following vehicles of his intention so to do. The driver of the following vehicle, in his turn, must exercise ordinary care to avoid collision with vehicles, both those in front and those behind him. Just how close to a vehicle in the lead a following vehicle ought, in the exercise of ordinary care, be driven, just what precautions a driver of such a vehicle must in the exercise of ordinary care take to avoid colliding with a leading vehicle which slows, stops, or swerves in front of him, just what signals or warnings the driver of a leading vehicle must, in the exercise of due care, give before stopping or slowing up of his intention to do so, may not be laid down in any hard and fast

or general rule. In each case except when reasonable minds may not differ, what due care required, and whether it was exercised, is for the jury. This is such a case.

In view of another trial, we think we should say that we agree with the view the District Judge took of the Tennessee parking statute. The bus was not parked or left standing within the meaning of that statute. The case appellant's pleadings and proof make is one of negligent handling, in improperly causing the bus to suddenly slow, stop, and swerve to the left and stop without giving adequate and proper signals and warnings. The statute invoked has to do with parking and standing. It has no application here.

The judgment is reversed, and the cause is remanded for further and not inconsistent proceedings.