ALBERT MITCHELL, ET AL. *v.* HENRY D. DOWDY

[No. 29, January Term, 1945.]

636

 

*Decided May 16, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Paul Berman* and *Eugene A. Alexander, III,* with whom were *Theodore B. Berman,* for John R. Wagus, and *Leon Abramson,* attorney for Albert Mitchell, also on the brief, for the appellant.

*James J. Lindsay* for the appellee.

COLLINS, J., delivered the opinion of the Court.

Here considered are two appeals in one record from the Superior Court of Baltimore City. The case comes to this Court on the refusal of the trial judge to grant the third prayer of each plaintiff, and on an exception to part of the oral instruction given the jury.

Between the hours of 3:00 and 3:30 A. M. in the early morning of July 14, 1943, a bright moonlight night, the road dry and the weather favorable, appellant, John R. Wagus, was operating his automobile, a 1937 Oldsmobile sedan, in an easterly direction on the Philadelphia or Pulaski Highway, Route 40, going from Balti-

more to Middle River. Accompanying Wagus and sitting on the front seat beside him was the other plaintiff, Albert Mitchell, both employees of the Eastern Aircraft Company. The road traversed by the plaintiffs in the vicinity of the accident is a dual highway with a grass plot thirty feet wide in the center and has two lanes for traffic going east and two lanes for traffic proceeding west. The concrete slabs on the north and south sides of the center grass plot are each twenty feet wide. The lanes are not marked by yellow or white lines, but merely by a separation in the concrete filled with tar to allow for expansion and contraction, making the division line a ribbon of tar. There is a gravel shoulder about eight feet wide on the right or outside of the east and west bound lanes. It is agreed that the accident occurred east of a crossover known as Todd's Lane which intersects the Philadelphia Highway.

The testimony of the plaintiff Wagus substantially follows: About a mile and one-half west of where the accident happened his automobile passed an intersection, and there was a tractor and trailer on the right-hand lane and a cab both traveling east. He admitted that as he entered the Philadelphia Highway, he saw the sign "Keep to the Right." After the cab had passed the tractor and trailer and was about seventy-five feet ahead of Wagus' automobile traveling at about thirty-five miles an hour, the plaintiffs passed the tractor and trailer and kept in the left-hand lane following the cab. Wagus blew his horn and blinked his lights, but the cab would not go over. Both the automobile and the cab were gaining momentum, and both kept in the left-hand lane about twenty-five feet apart for about a mile after they passed the tractor and trailer. The cab driver put on his tail light several times and as he did so, he pulsated and slowed up a little bit. As he did this the plaintiff Wagus, thinking the cab was going to make a left-hand turn and there being several cut-offs there, pulled to the right and after traveling for about one quarter of a mile, still about twenty-five feet behind the cab, the cab driver suddenly

pulled over to the right when the automobile was twenty to twenty-five feet behind the cab. At one time Wagus said that the cab was over on the right-hand side of the road and on cross examination he testified that the back of the cab was not all the way over. In order to avoid hitting the cab because it had gone over about thirty degrees diagonally on the road, he pulled his car to the right and put on his brakes. His left front fender hit the right rear fender of the cab, and he swung on over to the gravel and on the grass. He did not put on his brakes after he hit the cab, because he wanted to keep away from it. He lost control of the car which started to shimmy and then he put on the gas and tried to swing it out and "gun" it to get centrifugal force back again. Then the car turned over.

The testimony of Albert Mitchell, the other plaintiff, was essentially the same as that of Wagus.

Officer Charles Knoerlein, for the defendant, said that the distance between the place of accident and the next cross roads to the east was about five hundred feet.

Joseph E. Peyton, the cab driver, called for the defendant, testified that he was traveling out the Philadelphia road and passed the tractor and trailer, and after he had gotten twenty-five or thirty feet ahead and giving himself plenty of time, maybe a minute after he had passed and without slowing down, he cut all the way over in the right-hand lane. After he had gotten all the way over in the right-hand lane and straightened out, he felt a jar. He looked and the next thing he saw was an automobile shoot right in front of him, coming from the right-hand side off the shoulder, on the grass plot and turn over twice. Then he stopped his cab and went over to the car, and there were four men in that car, two on the front seat and two on the rear seat. Both of the plaintiffs testified that there were only two men in the car. He said he did not see any lights blinking on or off behind him nor did he hear a horn blow, and before he pulled to the right, he looked in the mirror and looked over his shoulder, and there were no lights behind him

except those of the tractor and trailer, and he thought that he was far enough ahead to pull in with safety. He did not see the automobile until he was hit by it.

Mrs. Virginia Marteney, called as a witness by the defendant, testified that she, her sister, and her sister's two children, one, one year old and the other three years old, were traveling in the cab driven by Peyton. She said that they were driving along at a very moderate rate of speed, not over thirty-five miles an hour. Immediately after they passed the tractor and trailer she felt an impact on the rear of the cab as they were going on back from the left side to the right-hand lane of traffic. She had no warning of what was behind her. The cab was about twenty-five or thirty feet beyond the tractor and trailer before the cab driver started to pull to the right. The car that hit the cab went across on the gravel. When she saw the other automobile it was moving fast. It hit the gravel, skidded, and turned back across the road in front of the cab and passed about eight feet in front of it and turned over in the center of the road. She said that before the impact, although she was in a position to observe, she did not hear any horn blowing or notice any lights flashing on or off. She did not get out of the cab after the accident.

The jury brought in a verdict for the defendant in both cases and from the judgments entered on those verdicts, the appellants appeal to this Court.

The third prayer of each plaintiff was to the effect that there was no evidence in the case legally sufficient to prove that either of the plaintiffs was guilty of any negligence which directly contributed to his injuries.

In order to rule that there was no contributory negligence on the part of either plaintiff, it would be necessary for the Court to find that as to contributory negligence the facts were undisputed and that only one reasonable inference could be drawn and that was that there was no contributory negligence on the part of the plaintiff. Where a reasonable inference can be drawn that there was contributory negligence on the part of the

plaintiffs, it is the duty of the trial judge to leave this question to the jury. It was said by this Court in the case of *Ziehm v. United Electric Light & Power Co.*, 104 Md. 48, at page 60, 64 A. 61, 62, in speaking of contributory negligence: "The law controlling this class of cases has been settled by numerous decisions of this court. It is this, where the facts are undisputed or where but one reasonable inference can be drawn from them, the question is one of law for the court; but where the facts are left by the evidence in dispute or where fair minds might draw different conclusions, the case should go to the jury."

Without repeating in detail the evidence hereinbefore recited, it is enough to say that there was sufficient conflict as to the pertinent facts between the testimony of the plaintiffs on the one hand and the testimony of the witnesses for the defendant on the other, to submit to the jury the question as to whether there was any contributory negligence on the part of John R. Wagus, the driver of the Oldsmobile.

As to contributory negligence of the guest Albert Mitchell, one of the plaintiffs, the passenger seated in the front seat of the car operated by the other plaintiff John Wagus, the evidence of these two is practically the same. According to the testimony, the same observations were made by Mitchell as were made by Wagus. Mitchell knew all the circumstances which were occurring at the time. There is no evidence to show that anything prevented him from objecting to the manner in which Wagus was operating the automobile. It was said by this Court in the case of *United Rys. & Electric Co. v. Crain*, 123 Md. 332, at page 352, 91 A 405, at page 410, quoting from *Brommer v. Pennsylvania R. R. Co.*, 179 F. 577, 29 L. R. A., N. S., 924, 929, and from *Davis v. Chicago, R. I. & P. R. Co.*, 159 F. 10, 18, 88 C. C. A. 488, 496, 16 L. R. A., N. S., 424, 431: "It is now the better recognized rule of law that as to such a person situated as was the plaintiff, riding in a vehicle in mere companionship with his friend, engaged upon mutual adventure, it is as much

his duty as that of the driver to take observation of dangers and to avoid them if practicable, by suggestion and protest. In other words, he is required to exericse ordinary care to avoid injury." Whether the occupant of a car has exercised reasonable care under the circumstances is a question for the jury. *Washington, B. & A. R. R. Co. v. State,* 136 Md. 103, 109, 111, 111 A. 164; *Kelly v. Huber Baking Co.,* 145 Md. 321, 337, 125 A. 782.

It was said by Judge Offutt in the case of *Dashiell v. Moore,* 177 Md. 657, at page 672, 11 A. 2d 640, 647: "The degree of vigilance and care which the guest is required to exercise for his own protection is not different from that required of the driver, 5 Am. Jur., 'Automobiles,' Secs. 475, 483, he is more than 'mere freight' Ibid. Sec. 479; *White v. Portland Gas & Coke Co.,* 84 Or. 643, 165 P. 1005, and must himself exercise reasonable care to discover danger, and if he does or should discover danger, and is aware that it is due in whole or in part to the manner in which the car is operated, or to the conduct of the driver, it is negligence for him to sit supine and indifferent without warning or protest. 5 Am. Jur., Automobiles, Secs. 478, 479. On the other hand if the situation is such as to indicate to a reasonably intelligent person that interference is likely to increase rather than lessen the danger, he is under no duty to interfere. 5 Am. Jur., Automobiles, Sec. 476. What will amount to reasonable care in a given situation is a matter of judgment and common sense, and is governed by no general rule applicable to all cases, but ordinarily is to be determined by a jury in the light of all the surrounding facts and circumstances." Mitchell saw everything that Wagus saw. He saw everything that Wagus did. There is no evidence of any protest or warning on the part of Mitchell. It was proper for the trial judge to leave to the jury for its determination whether it was his duty to protest to Wagus as to his driving of the automobile in the right-hand lane within twenty-five feet of the rear of the cab for a distance of one quarter mile after Wagus, by blowing his horn, had signaled the cab driver to pull

to the right, and therefore whether Mitchell was guilty of contributory negligence in not so protesting. The trial judge was correct in refusing the plaintiff Mitchell's third prayer.

That part of the trial court's instruction to the jury to which the appellants took exception follows: "I instruct you gentlemen that it is the duty, and was *in this case* the duty of the operators of both vehicles to have their vehicles under control at all times to such an extent as to avoid an accident in the event of ·emergency." (Italics supplied here.) As no exception was taken by the appellee to that part of the charge, he is not questioning the instruction that his cab should have been under control in order to avoid the accident. Although the question is not before us here, it was plainly the duty of the driver of the cab to have his vehicle under control when pulling back from the left-hand lane to the right-hand lane. 1943 Supp. Code, Article 66½, Section 164. We are therefore concerned under this exception with this question only as it applies to the automobile operated by Wagus.

It is provided by Acts of 1943, Chapter 1007, Section 169(a), Code, Article 66½, Section 169(a) : "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition·of the highway." It was said by this Court in the unreported case of *Greyhound Cab, Inc., v. Sewell,* 172 Md. 699, reported in 190 A. 814, at page 815, as to the distance to be maintained between automobiles, one following the other: " 'The only rule that can govern the interval to be maintained is that of reasonable care under the circumstances. The mere fact that a vehicle is moving in close proximity and keeping up with it does not of itself constitute negligence.' 2 *Blashfield, Cyclopaedia of Automobile Law* [Perm.] Ed., Sec. 942; *Lang v. Hanlon,* 302 Pa. 173, 153 A. 143; *Cardell v. Tennessee Electric Power Co.* (C. C. A.), 79 F. 2d 934."

It is also stated in *Huddy, Automobile Law,* 9th Ed., Vol. 3-4, p. 195: "It is the duty of the rear driver to keep

a safe distance between vehicles, and to keep his machine well in hand, so as to avoid doing injury to the machine ahead, so long as the driver is proceeding in accordance with his rights. Before attempting to pass a vehicle ahead, the rear driver must see that the road is clear, and if there is not sufficient room for a safe passage, or the driver ahead does not turn out so as to afford opportunity to pass, or if, after attempting to pass, the driver of the overtaking vehicle finds that he cannot make the passage in safety, the latter must slacken his speed so as to avoid the danger of a collision, even bringing his car to a stop, if necessary."

The plaintiff Wagus, in his testimony, stated as above set forth that both vehicles kept in the left-hand lane about twenty-five feet apart for about one mile. He blew his horn and blinked his lights, but the cab would not go over. The cab driver put on his tail light several times and as he did so, pulsated and slowed up at which time Wagus pulled to the right. He admitted that he traveled for about one-quarter of a mile, the cab in the left lane and he in the right lane, still about twenty-five feet in the rear of the cab. He also admitted that he saw the sign "Keep to the Right." He therefore knew that it was the duty of the cab driver to pull to the right as soon as the movement could be made with safety, particularly after he had blown his horn and blinked his lights to notify the cab driver to pull to the right. Therefore, under the circumstances and testimony in this case, we must conclude that Wagus, in keeping within twenty-five feet to the rear of the cab for a distance of one-quarter of a mile when the two drivers had the whole road to themselves, he being in the right lane and the cab being in the left lane, should have had his vehicle under control to such an extent as to avoid the accident. *Greyhound Cab Co. v. Sewell, supra; Dashiell v. Moore, supra*, 177 Md. 657, 11 A. 2d 640; *People's Drug Store v. Windham*, 178 Md. 172, 12 A. 2d 532.

It was proper to leave to the determination of the jury the question as to whether the accident was caused by the

failure of the driver of the automobile to have his vehicle under control in not keeping a reasonable distance behind the cab under all the circumstances of this case. *Greer Transportation Co. v. Knight*, 157 Md. 528, 536, 146 A. 851.

This instruction, when taken by itself and separate from the remainder of the oral charge, was too broad, but coupled with the charge as a whole cannot be held by this Court to be erroneous, particularly as it was confined to the circumstances in this particular case. *Balto. Transit Co. v. State,* et al.; *Bauernfeind v. State,* et al., 184 Md. 250, 40 A. 2d 678, 688. As pointed out in *Potts v. Armour & Co.,* 183 Md. 482, 39 A. 2d 552, at page 556, under the General Rules of Practice and Procedure, recently adopted by this Court, Rule 6, instructions to the jury may be given either orally or in writing or both, in the discretion of the Court, and when an oral charge is given it need not comply with the technical rules as to prayers. In its entirety, of course, it must correctly state the law applicable to the case.

As we find no error, the judgments will be affirmed.

> *Judgments in both cases affirmed, with costs.*