716 A.2d 1067

**Ronald J. TEUFEL**

v.

**Eric George O'DELL.**

**No. 1664, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Sept. 1, 1998.

David M. Kopstein (Justin S. Dross, on the brief), Seabrook, for appellant.

John D. Holler (Caufield and Holler, on the brief), Mt. Rainier, for appellee.

Argued before MOYLAN, SONNER and BYRNES, JJ.

MOYLAN, Judge.

The appellant-plaintiff, Ronald J. Teufel, sued the appellee-defendant, Eric George O'Dell, for damages suffered as a result of a collision between motor vehicles operated by the two of them. At the close of all of the evidence before a Charles County jury, the appellant-plaintiff moved for judgments in his favor on the issues of 1) the defendant's primary negligence and 2) his own lack of contributory negligence. The court denied the motion and the case was submitted to the jury. The jury's verdict was that the appellee-defendant was guilty of primary negligence, but that the appellant-plaintiff was also guilty of contributory negligence. The appellant moved for judgment n.o.v. on the issue of contributory negligence. That motion was denied and this appeal timely followed.

The collision occurred on August 24, 1994 at the intersection of St. Charles Parkway and Md. Route 5 in Waldorf. Both the appellant and the appellee were operating their vehicles in the southbound lane of St. Charles Parkway. The plaintiff's vehicle was in front of the defendant's. Both drivers intended to make right-hand turns onto Route 5. As the plaintiff initially approached the intersection, he observed that the traffic signal was displaying a red light for him and accordingly he brought his vehicle to a complete stop. The defendant also brought his vehicle to a complete stop behind the plaintiff's vehicle.

The plaintiff testified that he was still stopped when his vehicle was suddenly struck in the rear by the defendant's vehicle and that all of this happened before the plaintiff had begun to move again. The defendant, on the other hand,

testified that both vehicles had initially stopped at the red light but that both vehicles had started to move again, when the plaintiff's vehicle came to a second, unexpected, and "sudden" stop, as a result of which the defendant struck him in the rear. The jury, as was its prerogative, apparently chose to believe the defendant's version of the occurrence. The question is whether even that version justified submitting the case to the jury.

■ In determining whether the circuit court improperly denied the appellant's judgment n.o.v., this Court must "assume the truth of all credible evidence and all inferences of fact reasonably deducible from the evidence supporting the party opposing the motion. If there exists any legally competent evidence, however slight, from which the jury could have found as they did, a judgment n.o.v. would be improper." *Houston v. Safeway Stores, Inc.,* 109 Md.App. 177, 183, 674 A.2d 87 (1996), *rev'd on other grounds,* 346 Md. 503, 697 A.2d 851 (1997). In the context of this case, therefore, we will accept as true that version of the accident testified to by the appellee-defendant.

According to the defendant's trial testimony, the plaintiff's vehicle, after having come to a complete stop, began to proceed forward in an apparent attempt to make a right-hand turn onto Route 5. The defendant, in turn, then began to move forward, also intending to make a right-hand turn despite the red signal. The defendant testified that he turned his head to look left toward the oncoming traffic on Route 5, thereby diverting his attention momentarily from the plaintiff's car. It was that moment that the defendant's vehicle struck the rear of the plaintiff's car.

There is no dispute as to the defendant's primary negligence. The only issue is whether the defendant's testimony that the plaintiff "suddenly stopped" after beginning to make a right-hand turn onto Route 5 is sufficient evidence for the trial court to have submitted to the jury the issue of the plaintiff's contributory negligence.

Although the pertinent case law is part of the genre generally characterized as the "sudden stop" cases, it might be more precise to characterize the case before us as belonging to the sub-genre of "false start" cases. The law will not be different, but the more precise label will help convey a more·accurate picture of just what happened.

█ When two automobiles are travelling in tandem, each has a duty of care toward the other. The duty on the rear driver not to hit the car in front of him was clearly expressed by *Brehm v. Lorenz*, 206 Md. 500, 505, 112 A.2d 475 (1955):

The general rule has been established in this State that every automobile driver must exercise toward other travelers on the highways that degree of care which a person of ordinary prudence would exercise under similar circumstances. In the Maryland Motor Vehicle Law there is also this provision: *"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."* Code 1951, art. 66–1/2, sec. 189(a). Thus *it is the duty of the rear driver to keep a safe distance between vehicles, and to keep his machine well in hand, so as to avoid doing injury to the machine ahead, so long as the driver is proceeding in accordance with his rights.*

Just how near the driver of an automobile may follow another automobile and still exercise ordinary care depends upon the facts and circumstances of the case.

(Citations omitted; emphasis supplied).

There is also a reciprocal duty on the driver of the lead vehicle not to make, absent some sudden emergency, a sudden stop without giving an appropriate and timely signal of his intention to do so to the trailing vehicle. *Brehm v. Lorenz*, 206 Md. at 505–06, 112 A.2d 475, also spoke of that reciprocal duty:

*The driver of the front car must exercise ordinary care not to stop or slow up without giving the driver of the rear car adequate warning of his intention to do so.* The driver of

the rear car must exercise ordinary care to avoid colliding with the front car. Just how much warning the driver of the front car must give of his intention to stop or slow up, and what precautions the driver of the rear car must take to avoid colliding with a car which stops or slows up in front of him, cannot be formulated in any precise rule. The question whether due care was used by either of the drivers is a question for the jury except when the case is one where reasonable minds would not differ.

(Citations omitted; emphasis supplied).

The "sudden stop" cases in which the driver of the lead vehicle may be guilty of contributory negligence almost always involve the sort of situation described in *Clark v. Junkins,* 245 Md. 104, 107, 225 A.2d 275 (1967):

The alleged sudden stop without warning occurred in the middle of a block, at a point where a stop or sudden decrease of speed or a turn is not a probability ordinarily to be anticipated.

This was not remotely such a case and that is why the scenario before us can be better conceptualized as an arguably "false start" rather than as a "sudden stop" case.

■ The plaintiff was required by law to come to a complete stop at the red signal. *See* Md.Code Ann., Transp. § 21–202(h)(1998). He did so. He was then permitted, **BUT NOT COMPELLED**, to attempt a right-hand turn, provided that he could do so safely. *See* Md.Code Ann., Transp. II § 21–202(j)(1998). The defendant's own testimony was that the plaintiff satisfied that duty of care, to wit, not to attempt a right-hand turn unless he could do so safely. The defendant testified that the plaintiff did not consummate his contemplated right-hand turn because "there was oncoming traffic. He was about to go, but I guess he had to stop again because he [saw] a car or something." In order for the plaintiff to have been contributorily negligent, he would have to have undertaken some act that a reasonable person in his situation would not have undertaken. He did not do so.

It is not the stop *per se,* moreover, that may sometimes make the lead driver guilty of contributory negligence. It is rather the failure to give adequate and timely warning of the intention to stop or to slow down. In *Altenburg v. Sears,* 249 Md. 298, 304, 239 A.2d 569 (1968), the Court of Appeals spoke of the obligation to give timely warning:

> Exactly *how much warning the leading driver should give of his intention to slow down or stop* and what precautions the following driver should take to avoid a collision cannot be defined in a precise rule. Rather, as was said in *Brehm v. Lorenz,* 206 Md. 500, 112 A.2d 475 (1955), the duties of the respective drivers are correlative in that *the driver of the front vehicle must exercise ordinary care not to slow down or stop without giving the driver of the rear vehicle adequate warning of his intention* and in that the driver of the rear vehicle must exercise ordinary care to avoid colliding with the front vehicle. Ordinarily, as it was in *Brehm,* the question as to which of the drivers involved in a rear-end collision neglected to use due care is for the jury to decide.

(Emphasis supplied).

When cruising at a comfortable rate of speed down an open highway, a following driver may, within prescribed limits, languidly bask in Newton's First Law of Motion that a body in motion will continue in motion in the same direction and at a uniform rate of speed unless acted upon by a force. When stopped at a traffic light, however, such a reliance on Newtonian physics is no longer reasonable. A driver stopped at a light and contemplating a permitted right-hand turn, as was the plaintiff here, frequently will "creep" forward a few feet at a time in order to get a clearer view of oncoming traffic. It is by its very nature a tentative and hesitating maneuver, marked by frequent stops and starts. It is a situation where a following driver has no right blindly to assume that a tentative start will necessarily continue.

In terms of the duty of the lead driver to give a signal to following drivers, the initial stop for the traffic light by the

lead driver is itself the signal that the stopped car is in a holding pattern until circumstances permit the resumption of unimpeded forward progress. The continuation of forward motion by the lead driver is obviously contingent on unfolding circumstances that cannot be anticipated with certainty. *A fortiori*, the following driver may not blithely assume that a tentative "inching forward" by the lead vehicle necessarily portends clear sailing ahead.

In this case, moreover, even if we were to assume, *arguendo*, a failure on the part of the plaintiff to give a warning that he was about to stop a second time (there is no proof of any failure to warn), under the circumstances of this case that still would not have been the cause of the rear-end collision. A warning would not have helped to avert the collision for the simple reason that the defendant was looking elsewhere and could not have seen the warning:

Q: But, you took your attention off him before he quote suddenly stopped again?

A: Yes.

Q: And you were not looking at him when he stopped?

A: No, sir.

Q: Now, how do you know that he suddenly stopped?

A: Because I hit him.

\* \* \* \*

Q: And your attention was directed somewhere other than in front of you when you were driving?

A: Right, I was looking at oncoming traffic to make sure I could go and he was like about this far from oncoming traffic.

The defendant claims that the plaintiff has failed to preserve for appellate review his contention that judgment n.o.v. on the lack of contributory negligence was erroneously denied. The claim is without merit. Maryland Rule 2–532 permits a party to move for judgment n.o.v. only if "that party makes a motion for judgment at the close of all the evidence and only

on the grounds advanced in support of the earlier motion." The plaintiff here moved for a judgment on the issue of contributory negligence at the close of all of the evidence.

The failure of the plaintiff to object to the jury instruction on contributory negligence would, of course, prevent him from making an appellate claim that such an instruction was erroneously given. That, however, is not the plaintiff's claim. He claims that the very issue of contributory negligence should not have been submitted to the jury, with or without instruction. Dispositive of the non-preservation argument is *K & K Management v. Lee,* 316 Md. 137, 153–54, 557 A.2d 965 (1989):

> The appellees' nonpreservation argument rests on the lack of exceptions by the appellants to the trial court's instructions concerning interference with business relationships and on the statement by the defense that it had "no objection" to the special verdict sheet which the trial court furnished to the jury.... *[T]here was no obligation on defense counsel to except to the instructions as given when the defense position was that, as a matter of law, the tort of malicious interference should not have been submitted to the jury at all. That position was preserved by appellants' motion for judgment at the close of the evidence.* An exception to the court's failure to instruct the jury that the jury must return a verdict for the defendants on the count claiming malicious interference would have been redundant.

(Emphasis supplied).

***JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.***