In the Matter of the Application of JOHN P. QUINN, Petitioner, for an Order against DANIEL W. STREETER and Others, Civil Service Commissioners of the City of Buffalo, Respondents.

Supreme Court, Erie County, January 20, 1941.

*Thomas J. O'Donnell*, for the petitioner.

*David Diamond, Corporation Counsel [Andrew P. Ronan* of counsel], for the respondents.

HINKLEY, J. This special proceeding under article 78 of the Civil Practice Act has been forthwith tried by the court after the entry of an order dismissing the preliminary objections raised by respondent to the petition. There were issues of fact raised by the petition and the answer, but upon the trial no questions of fact or disputed facts from which different inferences could be drawn, were presented.

Petitioner, a lieutenant of police, presented himself to the respondent civil service commissioners for examination as a candidate for promotion to the office of captain in the Buffalo city police. He was given a written examination, a marksmanship test, and his right of seniority determined. The respondents delegated the preparation of the questions for the written exami-

nation to Walter F. Hofheins, a qualified and experienced attorney at law and a former assistant district attorney of Erie county. The examination paper of petitioner was referred to Attorney Hofheins, who gave to the petitioner separate ratings upon the answers to the ten questions asked. The petitioner appealed from the ratings of Attorney Hofheins, whereupon the respondent commissioners referred the petitioner's examination paper back to said Hofheins, who gave an additional credit to the petitioner. The petitioner then appealed to the commissioners to refer the examination paper to an impartial outside examiner other than Attorney Hofheins. This the commissioners refused to do, but again returned the paper to Attorney Hofheins. In the opinion of the commissioners the ratings so given by said Hofheins were in the aggregate so low that if the other tests were to be applied and full credit given to petitioner he would even then be below the passing mark of 75 out of a total of 100 for all tests.

The method of determining the standing of candidates as adopted by the commissioners is somewhat involved. There are on the written examination ten questions, and in the first instance each answer is entitled, if correct, to ten points. When the aggregate of the rating or marking of the ten questions is made up, the total of one hundred per cent is reduced to seventy-five per cent and the ratings reduced correspondingly. Five points are allotted as a maximum for marksmanship and ten points as a maximum for prior service or seniority as a lieutenant. The remaining ten points have been designated as oral or empirical tests. The rating upon the last ten points is arrived at as follows, to wit: The aggregate marking of the written examination plus the allotment for marksmanship and seniority or prior service is multiplied by the figure .0889 and the remainder of the ten per cent is rated in accordance with the commission's determination of the candidate's appearance and personality.

Attention is called to the statement of the president of the commission on page 2 of petitioner's Exhibit 4: "Then you take your technical paper plus your seniority and multiply the same by .0889. * * * Then that leaves two points for personal — only 2% out of a total of 100." That was an obvious omission of the credit for marksmanship, for he stated on the same page: "According to your paper as it now stands with the credit allowed you on the appeal, you would get 72.21%," which sum included marksmanship.

Attention is also called to his testimony on page 35 of the minutes of the trial: "It would be the sum of his written paper, the mark of his written paper, his marksmanship, his seniority,

added together, and multiplied by 8.8." There is an apparent discrepancy, not material to this decision, between the figures .0889 and 8.8, neither of which would leave a full empirical two per cent.

The court suggests the unfairness in the method of dividing the so-called last ten per cent apparently intended for the oral examination. For in multiplying the sum of the rating upon the written examination, the credit for marksmanship and the credit for seniority or service by either .0889 or 8.8 gives to those who have passed higher in the three previous tests an automatic mathematical increased benefit which they have not earned.

There is no challenge as to this method of rating which has apparently been universally adopted, except as above indicated. There is no suggestion [of favoritism on the part of the commissioners nor Attorney Hofheins. The court, however, as shown by its opinion dismissing the preliminary objections, has determined that the reference of petitioner's appeals back to the original examiner was unjust, arbitrary and unlawful and that the petitioner was entitled to a review of the determination of the commissioners. That the acts of the commissioners were unjust, arbitrary and unlawful was borne out upon the trial when it was established that no definite, permanent, objective standards were set up by the examiner, Hofheins, to whose judgment the commissioners, not being attorneys at law, delegated their power to qualify or disqualify petitioner on his written examination. (*Matter of Quinn* v. *Streeter*, 174 Misc. 1073, and cases therein cited.)

Attorney Hofheins gave to the petitioner the following rating: On question 1, 5 points; question 2, 10 points; question 3, 6 points; question 4, 9 points; question 5, 9 points; question 6, 5 points; question 7, 4 points, divided as follows: No credit on (a) to which was given a total of 3 points if correct; 1 on (b) to which was given a total credit of 4 points if correct; 3 on (c) which was given full credit. Question 8, 7 points, divided as follows: 2 points on (a), to which was given a total credit of 5 points, and 5 points on (b), which was given full credit. Question 9, 10 points; question 10, 10 points.

Thus the petitioner received on the written examination a rating of 75 out of a possible 100, which when reduced to 75 amounted to 56.25, to which was added 3.33% for seniority or service and 4.9 for marksmanship, making a total of 64.48, to which, if petitioner were given the entire 10% allotted for the oral or empirical rating, would be below the rating of 75% which was required for passing.

Upon a review of the determination of the commissioners it was apparent that the examiner had not set up an objective standard sufficiently clear and permanent to accomplish its purpose. In fairness to all candidates a definite, permanent objective standard should be adopted by the examiner not only in aid of his own exactness but to assist the court in the event of a review or as a guide for other examiners of equal ability and experience.

Latitude must be given an examiner, particularly in the rating to be given to the essay type of answer. However, among the specific ratings questioned by petitioner there were three for which he should have been given additional credit. The question and answer numbered 7-a are as follows: " In a homicide case can the body of the crime (*corpus delicti*) be proved by circumstances? " Answer: " Yes. In a homicide case the body of the crime (*corpus delicti*) meaning the death of the person alleged to have been killed & the guilt of the defendant, the death of the person killed must be proven beyond every shadow of a doubt, usually proven by the testimony of the Medical Examiner & the guilt of the defendant must be proven beyond a reasonable doubt."

The affirmative answer to the question as framed was absolutely correct, for every crime may be proved by circumstances. " A circumstance is a condition or event accompanying or determining the occurrence of another fact or event." (Webster's Dict.) A circumstance is synonymous with event, which is " anything that happens or comes to pass as distinguished from a thing that exists." (Standard Dict.)

Petitioner, as one ordinarily would, sensed that the examiner had intended to use the words " circumstantial evidence " which is more or less of a stock question, instead of the word " circumstances." The petitioner's answer to the question if thus framed was correct and indicated a careful study and keen grasp of the subject. A lieutenant of police who seeks promotion to the rank of captain is not called upon to employ legalistic language. Nor is he required to quote verbatim from Bouvier, Black, Anderson, English, Tomlin, Jacob, Wharton, Words and Phrases, or the Criminal Code. He did not fall into the error so common on the stage, in current literature, on the screen and radio, of defining *corpus delicti* as the body of the victim. Petitioner should have received a full credit of 3 for his answer.

Question 7 (b) contained two elements, and as one element at least was correctly answered petitioner should have received a credit of 2 out of 4 instead of 1.

Question 8 (a) is as follows: " When and how, so as to be competent as evidence in a criminal action, would you as a captain

take a dying declaration? " His answer was: " In case where if the person dies the crime will be homicide or dies as the result of an illegal abortion I would whenever possible take a dying declaration in writing if possible and get the victim to sign it and have it witnessed. I would take it in the following form:

" 1. What is your name?

" 2. Where do you live?

" 3. Do you believe that you are about to die of your present injuries?

' 4. Who did this to you, and why? "

The examiner contended that the only correct answer to that question was that a dying declaration could only be taken when the victim believed that death was imminent. It is apparent that the answer of the petitioner was equally correct, and he should have received a full credit of 5. This gives to petitioner a total of 82 upon his written examination. Seventy-five per cent of 82 equals 61.50, to which must be added 4.90 for marksmanship and 3.33 for seniority or service, making a total of 69.73. Multiplying the latter figure by .0889 equals 6.20, which, added to the sum of 69.73, equals 75.93, which is above the passing mark without allowing any credit for the so-called empirical two per cent allotment.

Order may be entered, with costs, requiring the commissioners forthwith to give to the petitioner a rating of 75.93 plus such additional empirical credit as to the commissioners shall seem proper, and that the name of petitioner be added to the list for captain in the order of his standing as thus ordered and determined.