580 A.2d 188

**William Harrison PRIVETTE**

v.

**STATE of Maryland.**

**No. 46, Sept. Term, 1989.**

Court of Appeals of Maryland.

Oct. 9, 1990.

Sherrie B. Glasser, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief) Baltimore, for appellant.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS* and BLACKWELL,** JJ.

COLE, Judge.

We are requested to answer three questions in this case: (1) whether a circuit court has original jurisdiction to try a defendant on a charge of driving without insurance; (2) whether the trial court erred in preventing the defendant from arguing to the jury the Motor Vehicle Administration's (MVA) duties regarding uninsured motorists as set forth in Maryland Code (1987 Repl.Vol.), § 17–106 of the Transportation Article; and (3) whether the trial court

---

\* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

\*\* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; but did not participate in the decision and adoption of this opinion.

improperly admitted hearsay testimony and thereby committed prejudicial error.

The facts are not complicated. William Harrison Privette, Petitioner, was involved in a fatal automobile accident on January 16, 1985. On April 30, 1985, Petitioner was charged by indictment in the Circuit Court for Harford County with manslaughter by motor vehicle, homicide by motor vehicle, homicide by motor vehicle while intoxicated, driving under the influence of alcohol, reckless driving, negligent driving, and failure to yield the right of way. As a result of the investigation after the accident, a copy of the title record of the vehicle was obtained from the MVA. It indicated that there was no insurance coverage on the vehicle Privette had been driving when the accident occurred. As a result of this fact, Privette was charged on September 11, 1985, by information, with driving without insurance in violation of Maryland Transp.Code Ann. § 17–107. On that same date, the State filed a motion to consolidate the two cases.

Both cases were called for trial on October 6, 1988 in the Circuit Court for Harford County (Waldron, J.). The court denied the motion to consolidate, and trial proceeded only on the indicted offenses. On January 3, 1989, trial began in the Circuit Court for Harford County (Whitfill, J.) on the charge of driving without insurance. It is from the judgment entered after this trial that this appeal was taken.

In the January 3rd trial, Privette filed a motion to dismiss, maintaining that driving without insurance is a misdemeanor over which the District Court has exclusive jurisdiction by statute. That motion was denied on the ground that the insurance charge arose out of the same circumstances as the manslaughter offense which was proceeding in circuit court. The trial court further determined that pursuant to Md.Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article, § 4–302(f), the District Court had been divested of jurisdiction. The trial court reasoned that because the jurisdiction of the circuit court had been invoked regarding some of the charges arising from the accident, all

charges arising from that accident, including those which would otherwise be within the exclusive jurisdiction of the District Court, were within the jurisdiction of the circuit court.

After all the evidence had been received, the trial court refused to give a jury instruction requested by Privette dealing with the MVA's duties once it receives notification of a termination or lapse of insurance coverage. Privette objected to the denial of this instruction. Subsequently, he attempted to address these same statutory duties during closing argument. The State objected, and at a bench conference the judge refused to allow Privette to argue the statute to the jury.

He was found guilty of driving without insurance and was sentenced to one year with all but six months suspended. He appealed to the Court of Special Appeals, and we granted certiorari on our own motion before argument in that court.

I

Privette contends that the insurance charge is wholly unrelated to the accident which gave rise to the other charges. According to Privette, the only nexus between the insurance charge and the manslaughter by vehicle charge was the coincidental occurrence of the collision. He maintains that because there was no causal relationship between driving without insurance and the accident, the insurance charge did not arise out of the same circumstances which generated the manslaughter charge. Privette concludes that only the common fact of the operation of the automobile links the two charges.

The State relies on § 4–302 of the Courts and Judicial Proceedings Article to argue that the District Court was divested of jurisdiction over the insurance charge when the other charges stemming from the accident were filed in circuit court. In pertinent part, § 4–302 provides:

(d) **Concurrent jurisdiction cases.**—The jurisdiction of the District Court is concurrent with that of the circuit court in a criminal case:

(1) In which the penalty may be confinement for *three years or more* or a fine of $2,500 or more; or

\* \* \* \* \* \*

(e) **Jury Trial.**—

(1) The District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial at any time prior to trial in the District Court.

\* \* \* \* \* \*

(f) **Several Offenses.**—(1) ... *the District Court does not have jurisdiction of an offense* otherwise within the District Court's jurisdiction if a person is charged:

\* \* \* \* \* \*

(ii) In the circuit court with an offense arising out of the same circumstances and within the concurrent jurisdictions of the District Court and the circuit court described under subsection (d) of this section.

(emphasis added).

At the time of the accident, vehicular manslaughter was a misdemeanor punishable by not more than five years or a fine of not more than $1,000.00, or both. Md.Code (1987 Repl.Vol.), Art. 27, § 388.[1] Homicide by motor vehicle while intoxicated carried a penalty of imprisonment for not more than three years or a fine of not more than $1,000.00, or both. Art. 27, § 388A.[2] Based on these potential sentences, both charges were within the concurrent jurisdiction of the District Court and the circuit court under § 4–302(d)(1).

---

**1.** The current penalty for manslaughter by automobile is not more than ten years imprisonment, or not more than $5,000.00 fine, or both. Md.Code (1989 Cum.Supp.) Art. 27, § 388.

**2.** Homicide by vehicle while intoxicated currently carries a penalty of imprisonment for not more than five years, or fine of not more than $3,000, or both. Art. 27, § 388A.

The State argues that once charges were filed in the circuit court, all other offenses arising from the accident were properly before the circuit court. This includes the offense of driving without insurance, which is otherwise within the exclusive jurisdiction of the District Court. The State points out that Privette's driving of an uninsured vehicle during the accident created the offense, not just simply being uninsured. There had been no charge for driving an uninsured vehicle at any other time. The State maintains that the fact that the insurance charge was not filed until five months after the other charges should be of no consequence. According to the State, the controlling factor is whether the charges arose from the same circumstances, not whether the charges were all filed at the same time.

The appellate courts of this state have reviewed a number of cases in which it was decided that the District Court had been properly divested of exclusive jurisdiction pursuant to § 4–302. In most of those cases, the divestiture was effected by a timely prayer for a jury trial where all of the offenses arose out of the same circumstances. *See* § 4–302(e). *See also State v. Huebner,* 305 Md. 601, 505 A.2d 1331 (1986); *Hart v. State,* 51 Md.App. 341, 443 A.2d 635 (1982); *Howard v. State,* 32 Md.App. 75, 359 A.2d 568 (1976). There being no prayer for a jury trial involved in this case, the basic issue is whether the uninsured vehicle charge "arose from the same circumstances" as the vehicular manslaughter charge and is thereby governed by § 4–302(f)(1)(ii).

■ As we have stated on numerous occasions, the cardinal rule of statutory interpretation is to ascertain and effectuate the legislative intention. *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471 (1988); *In re Arnold M.,* 298 Md. 515, 520, 471 A.2d 313 (1984). The language of the statute itself is the primary source of this intent; and the words used are to be given "their ordinary and popularly understood meaning, absent a manifest contrary legislative intention." *In re Arnold M.,* 298 Md. at 520, 471 A.2d 313. *See*

*also Kaczorowski v. City of Baltimore,* 309 Md. 505, 514, 515, 525 A.2d 628 (1987). Stated another way, where the language of the statute is free from ambiguity, courts may not disregard the natural import of the words used in order to extend or limit its meaning. *Id.* at 521, 471 A.2d 313.

 Although the phrase "same circumstances" is not defined in the statute, it is a familiar phrase which is used in various contexts. The paucity of cases defining the subject of this phrase—"circumstances"—is instructive. Generally, the word "circumstances" is defined as all the attendant or accompanying facts, events or conditions which bear upon, stand around or about another fact, event or condition. *See e.g., State of Maryland v. United States,* 165 F.2d 869, 871 (4th Cir.1947); *Quinn v. Streeter,* 24 N.Y.S.2d 916, 920, 175 Misc. 932 (1941); *Pope v. Reading Co.,* 304 Pa. 326, 333, 156 A. 106, 109 (1931); *see also* Black's *Law Dictionary* 220 (5th ed. 1979). Accordingly, under § 4–302, once a person is charged in the circuit court, the District Court is divested of jurisdiction over *all offenses* arising out of the same accompanying facts. We do not believe the meaning of this phrase could be any plainer.

 It seems to us that whether two or more offenses arise out of the same circumstances depends on no more than a showing that the offenses spring from the same attendant or surrounding facts, events or conditions. The phrase "same circumstances" does not lend itself to a more precise definition. Thus, we specifically reject the Petitioner's contention that our determination should be based on the causal relationship between the offenses.

In the instant case, Privette was charged with unlawfully operating an uninsured vehicle in Harford County on the 16th day of January, 1985. This event accompanied the events occurring on that same date and at the same time and place and from which the manslaughter and other charges arose. Accordingly, we hold that the offense of unlawfully operating an uninsured motor vehicle was properly before the circuit court, the District Court having been

divested of exclusive original jurisdiction at the time Privette was indicted in circuit court.

## II

Next, Privette contends that the trial court committed reversible error in preventing him from arguing his interpretation of the applicable law to the jury. Had he been allowed, he would have argued that the MVA had a statutory duty to notify a driver of a lapse or termination of his insurance, and instruct him to surrender his license. Initially, Privette attempted to have the court instruct the jury on Md.Code (1977, 1987 Repl.Vol.), Maryland Transportation Article, § 17–106. It reads, in pertinent part:

(c) **Administration to notify owner of suspension.**— On receipt of a notice under subsection (b) of this section, the Administration shall make a reasonable effort to notify the owner of the vehicle that his registration has been suspended.

(d) **Owner to surrender evidences of registration.**—

(1) Within 48 hours after an owner is notified by the Administration of the suspension of registration, the owner shall surrender all evidences of that registration to the Administration.

(2) If the owner fails to surrender the evidences of registration within the 48–hour period, the Administration:

(i) Shall attempt to recover from the owner the evidences of registration; and

(ii) May suspend his license to drive until he returns to the Motor Vehicle Administration the evidences of registration.

The judge refused to give the instruction submitted by Privette.[3] Subsequently, Privette attempted to argue to

---

3. The requested instruction was read into the record as follows:

the jury that § 17–106 required the MVA to notify Privette, and to attempt to pick up his tags, when the MVA was notified of the cancellation of his insurance. The State objected, and the court forbade Privette from making that argument. The court did permit Privette to argue that there was no evidence in the MVA records indicating the MVA had ever notified him of cancelled insurance, or of an attempt to seize his tags. Privette was also free to argue that he had never received any notice from the MVA as he had testified.

The trial judge cannot be faulted for failing to give the precise instruction requested by the defendant. It is a mish-mash of garbled verbiage, more apt to confuse than to inform. Notwithstanding that, we believe the trial judge should have acceded to Privette's request that he instruct the jury concerning the requirements imposed by law upon the MVA when it received notice of insurance cancellation.

---

After July 1, 1983, the insurance company was required to notify the Motor Vehicle Administration of a lapse or termination of insurance coverage.

You [sic] instructed that by law the Motor Vehicle Administration has a variety of duties upon lapse or termination of required security, which is another word for insurance. Upon the termination or lapse of insurance the Motor Vehicle Administration must automatically suspend the registration for the vehicle upon which the insurance has lapsed. Any such suspension of registration, until insurance is reinstated, and the owner submitted evidence of reinstatement of insurance certified by an insurer or agent, and until any uninsured motorist penalty fee assessed is paid to the Administration. [sic].

The Administration must notify the owner of the suspension of his registration and instruct the owner of the surrender of all registration plates and registration card to the vehicle in question within 48 hours of that notification. If the owner fails to surrender such evidence of registration, the Administration shall attempt to recover all registration cards and plates for said vehicle. The Motor Vehicle Administration has an opportunity to suspend the owner's license to drive until he returns such evidence of registration to the Motor Vehicle Administration. If the Administration suspends the vehicle registration and imposes a monetary penalty, which is automatic for such lapses in insurance, the Motor Vehicle Administration may not reinstate the registration or issue new registration to the vehicle owner until that penalty is paid.

We conclude that the failure to instruct the jury concerning the law requires the granting of a new trial.

■ We do not suggest, nor do we understand Privette to suggest, that the MVA's failure to give notice would constitute a defense to the crime charged. Privette was charged with operating a motor vehicle not covered by insurance while he had knowledge that he was not insured. Section 17–107(a) of the Transportation Article provides that:

A person who knows or has reason to know that a motor vehicle is not covered by the required security may not:

(1) Drive the vehicle....

If Privette operated an uninsured motor vehicle with knowledge it was uninsured, then he was guilty, whether the MVA carried out its statutory duties or not. But that was not the question Privette sought to raise. His defense was that he thought he had obtained insurance when he received a binder number from his agent at the time he purchased the vehicle; that he did not realize premiums were not being paid because his wife handled his finances; and, that he was confident he still had insurance because the MVA had never advised him to the contrary, or attempted to pick up his tags, and in fact had issued new tags to him each year. To support his argument that he was justified in placing reasonable reliance on the action by the MVA, he wished to have the jury instructed concerning the law as it related to the MVA's obligations. That, we conclude, was an appropriate request.

Maryland Rule 4–325(c) requires that "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." This Court has said "that where there was a request for instruction that was technically erroneous, the court should have included a correct instruction in his charge." *Noel v. State*, 202 Md. 247, 252, 96 A.2d 7 (1953). *See also Clark v. State*, 80 Md.App. 405, 411–15, 564 A.2d 90 (1989).

The thrust of Privette's argument was clear. The trial judge should have instructed the jury concerning the relevant portions of § 17–106, and at the same time made it clear that the failure of the MVA to give notice, if the jury should so find, would not constitute a defense to knowingly operating an uninsured motor vehicle, but was being explained to them for their consideration in determining whether Privette did have knowledge that the vehicle was not insured.

JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY VACATED; CASE REMANDED TO THAT COURT FOR NEW TRIAL; COSTS TO BE PAID BY HARFORD COUNTY.