674 A.2d 87

**Carrie HOUSTON**

v.

**SAFEWAY STORES, INC.**

**No. 1013, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

April 1, 1996.

178

Lawrence S. Lapidus (Jack A. Gold and Chaikin & Karp, P.C., on the brief) Bethesda, for Appellant.

L. Palmer Foret (Craig L. Davitian and Foret & Thompson, on the brief) Washington, DC, for Appellee.

Argued before BLOOM, FISCHER and CATHELL, JJ.

CATHELL, Judge.

In resolving the instant appeal, we shall address an issue of first impression—the immunity from civil liability of retail establishments under Maryland Code (1973, 1995 Repl.Vol.),

§ 5–378 of the Courts and Judicial Proceedings Article (CJ). *In toto,* that section, *as codified,* now reads:

**[Immunity]—Customer use of employee toilet facility in retail establishment.**[1]

(a) *Definition.*—In this section "customer" means an individual who is lawfully on the premises of a retail establishment.

(b) *In general.*—A retail establishment and any employee of a retail establishment are not civilly liable for any act or omission in allowing a customer, including a customer as defined in § 24–209 of the Health–General Article, to use a toilet facility that is not a public toilet facility, if the act or omission:

(1) Is not willful or grossly negligent;

(2) Occurs in an area of the retail establishment that is not accessible to the public; and

(3) Results in an injury to or death of the customer or any individual other than an employee accompanying the customer.

(c) *Employee toilet not public restroom.*—Notwithstanding any provision of this section, an employee toilet facility is not to be considered a public restroom.

Appellant, Carrie Houston, challenges the interpretation and application of CJ § 5–378 by the Circuit Court for Prince George's County (Melbourne, J., presiding) in its rendering of a judgment notwithstanding the verdict in favor of appellee, Safeway Stores, Inc. (Safeway). She presents two issues for our review:

1. Whether the trial court erred in granting the defendant judgment notwithstanding the verdict in light of substantial evidence supporting the jury's finding that the restroom at issue was a public toilet facility rather than an employee toilet facility.

---

1. As we explain, *infra,* the codifiers have improperly titled this section.

2. Whether the trial court erred in its construction and application of the statute entitled "Immunity—Customer Use of Employee Toilet Facility in Retail Establishment," Md.Code Ann., Cts. & Jud.Proc. § 5–378 (1995 Repl.Vol.).

For reasons to be discussed, we shall affirm the trial court's entry of judgment *non obstante veredicto,* addressing both issues simultaneously.

## FACTS AND PROCEEDINGS

On September 16, 1992, appellant, while shopping at appellee's Lanham location, "inquired of a[n] . . . employee whether there was a restroom available for her use." She was directed by Safeway personnel to go to the back of the store and to proceed through a set of double doors, each bearing a "No Admittance" sign. Beyond the double doors is a storage area or stockroom, described by one witness as the store's back room. Whatever its characterization, it is clearly a nonretail area designed to support the public, retail areas of the store. In that nonpublic area, beyond the doors bearing the "No Admittance" signs, is a nine-foot wide, ninety-foot long passageway. Appellant was directed to walk down that passageway to reach the rest room. Notably, the store is equipped with two other rest room facilities, adjacent to an employee lounge area on an upper floor, which are accessible by a stairway located just beyond the rest room at issue. Appellant indicated at trial that she went up and down the path three times in search of the facility; it was on her third pass that she slipped and fell on what she described as a piece of twine or rope, sustaining severe injuries, resulting in the amputation of a toe.

Appellant brought suit against appellee on negligence grounds, claiming, *inter alia,* that appellee had breached its "duty to reasonably maintain and inspect the premises in issue." The issues of liability and damages were bifurcated, and the four-day trial commenced on February 27, 1995. At the close of appellant's case-in-chief, appellee moved for judg-

ment, relying largely on CJ § 5–378 and the immunity granted thereby. The trial court reserved ruling on the motion, and appellee presented its case. At the close of all the evidence, appellee renewed its Motion for Judgment, relying on the same grounds as previously iterated. The trial court again reserved ruling thereon, and the case was submitted to the jury, which returned a verdict in favor of appellant. By special verdict, the jury found as fact the following: that the rest room at issue was not an employee facility; that the facility was a public rest room; that Safeway was negligent; and that appellant was not contributorily negligent.

Appellee then filed a Motion for Judgment Notwithstanding the Verdict, Motion for a New Trial, Motion to Alter or Amend the Judgment, and Motion to Vacate Judgment. Safeway argued that CJ § 5–378 was designed to shield retailers from liability in precisely the situation presented by the case at bar. It also claimed that appellant had failed to present sufficient proof that the rest room at issue was a public, rather than an employee, facility.[2] A hearing on the Motion was held May 10, 1995, after which the trial court, stating that the statute "was designed exactly for this situation," ruled in favor of appellee on the Motions for Judgment upon which it had earlier reserved ruling. Judgment was entered accordingly, notwithstanding the jury's verdict.

Appellant filed the instant appeal therefrom.

## APPELLATE STANDARD OF REVIEW

■ We note at the outset that Maryland Rule 2–532(b) provides that a motion for judgment, made at the close of all the evidence and upon which the trial court reserves ruling, "becomes a motion for judgment notwithstanding the verdict if

---

**2.** As we shall discuss, *infra,* while the status of a rest room as an employee rest room is pertinent *if it is in fact an employee rest room* (because the statute mandates that an employee rest room is not public in nature), the fact that a rest room is not an employee rest room does not mean that it is one available for use by the general public. Under the statute, it is the public or private nature of the facility that must be determined.

the verdict is against the moving party." *See also McSlarrow v. Walker,* 56 Md.App. 151, 154 n. 1, 467 A.2d 196 (1983), *cert. denied,* 299 Md. 137, 472 A.2d 1000 (1984). "[A] motion ... n.o.v. tests the legal sufficiency of the evidence," *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 326, 389 A.2d 887 (1978), and "is reviewed under the same standard as a judgment granted on motion during trial," *Huppman v. Tighe,* 100 Md.App. 655, 663, 642 A.2d 309 (1994). To this end, we "assume[ ] the truth of all credible evidence and all inferences of fact reasonably deducible from the evidence supporting the party opposing the motion. If there exists any legally competent evidence, however slight, from which the jury could have found as they did, a j.n.o.v. would be improper." *Huppman,* 100 Md.App. at 663, 642 A.2d 309; *see also Dennard v. Green,* 335 Md. 305, 322–23, 643 A.2d 422 (1994) (quoting *Impala Platinum,* 283 Md. at 328, 389 A.2d 887); *Levine v. Rendler,* 272 Md. 1, 12, 320 A.2d 258 (1974); *McSlarrow,* 56 Md.App. at 158, 467 A.2d 196 and cases cited therein.

## STATUTORY CONSTRUCTION

Paramount in undertaking the construction of any statute is the intent of the Legislature. *See Mauzy v. Hornbeck,* 285 Md. 84, 92, 400 A.2d 1091 (1979); *Mazor v. Department of Correction,* 279 Md. 355, 360, 369 A.2d 82 (1977); *Board of Supervisors of Elections v. Weiss,* 217 Md. 133, 136, 141 A.2d 734 (1958). "The language of the statute itself is the primary source of this intent...." *Privette v. State,* 320 Md. 738, 744, 580 A.2d 188 (1990); *see also Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730 (1986). Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself. *Giant of Maryland, Inc. v. State's Attorney,* 267 Md. 501, 512, 298 A.2d 427, *appeal dismissed,* 412 U.S. 915, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973); *Hunt v. Montgomery County,* 248 Md. 403, 414, 237 A.2d 35 (1968). *But see Tracey v. Tracey,* 328 Md. 380, 387–88, 614 A.2d 590 (1992); *Kaczorowski v. Mayor of Balti-*

*more,* 309 Md. 505, 514–15, 525 A.2d 628 (1987). To this end, the words are to be accorded their ordinary and generally understood signification, absent evidence to the contrary. *Brodsky v. Brodsky,* 319 Md. 92, 98, 570 A.2d 1235 (1990); *Privette,* 320 Md. at 744–45, 580 A.2d 188; *Mazor,* 279 Md. at 360, 369 A.2d 82. Care must be given to avoid construing a statute by forced or subtle interpretations. *Comptroller of the Treasury v. Fairchild Indus., Inc.,* 303 Md. 280, 284, 493 A.2d 341 (1985). We are quick to note, however,

> [t]hat a term may be free from ambiguity when used in one context but of doubtful application in another context. . . .
>
>  . . . .
>
>  . . . [W]here a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. . . . [T]he court . . . may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.

*Tucker,* 308 Md. at 74–75, 517 A.2d 730 (citations omitted); *see also Tracey,* 328 Md. at 387, 614 A.2d 590 ("[T]he statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body."). Moreover, "[i]f reasonably possible, a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless." *Mazor,* 279 Md. at 360, 369 A.2d 82. "Statutes are enacted to further an underlying goal, aim, or purpose, and must be interpreted in accordance with their general purposes and policies." *Toft v. State of Nevada ex rel. Ali Pimentel,* 108 Md.App. 206, 671 A.2d 99 (1996).

## THE LEGISLATIVE HISTORY

In tracing the legislative history of the relevant statute, CJ § 5–378, since its inception and the inception of its predeces-

sors, we note that, prior to 1987, retail establishments in Maryland were not required to allow customers or patrons access to their nonpublic rest rooms. Generally, prior to 1987, a merchant could protect himself from liability toward invitees in respect to rest room facilities by denying customers access to those private rest rooms. *See Restatement (Second) of Torts* § 332 cmt. 1 (1965); 62 Am.Jur.2d *Premises Liability* § 102 (1990) ("If a person . . . goes to a place not covered by the invitation, the . . . duty of care owed to such person as an invitee ceases forthwith. . . . [T]here can be no recovery for resulting injury, even though he is an invitee to other parts of the premises." (footnotes omitted)).

In 1986, in an attempt to capitalize upon a statute that required businesses to maintain one bathroom for every fifteen employees, proponents of a measure to require businesses to allow patrons to utilize those rest rooms prompted introduction of a bill in the Maryland Senate that read, in part:

> At the request of a customer, each retail business establishment that has a toilet facility for its employees shall allow the customer to use the facility.

S.B. 516 (1986). Notably, as written, Senate Bill 516 provided customers unlimited access to private rest room facilities without regard to the retailers' potential liability for injuries sustained by patrons concurrent with their use of the facilities. As initially written, therefore, it would have required retailers to expose themselves to substantial liability. The bill met with strong opposition in both the Legislature and the retail community. Proposed amendments limiting the scope of the statute to businesses with twenty or more employees were not able to assuage its opponents' security and liability concerns. The bill did not pass.

The bill was rewritten and reintroduced in 1987, with significantly more limitations, "[i]n an attempt to exempt the 'Mom and Pop' operations, and to limit the extent of the bill to those who were truly in need of immediate access to toilet facilities because of a medical problem." Retail Establishments—Toi-

let Facilities: Hearings on S.B. 413 Before the Environmental Matters Committee (1987) (Testimony of Senator Barbara Hoffman). Specifically, under Senate Bill 413, only *certain* retail businesses with employee rest room facilities were required, under *certain* limited circumstances, to permit customers to use those rest rooms.

> The intent of th[e] bill [was] to require a retail establishment with 20 or more employees to allow a customer access to the establishment's toilet facility if the customer has a medical condition that requires immediate access to a toilet facility ... [and] to provide access to toilet facilities for a small part of the population whose medical conditions require such access.

Senate Economic and Environmental Affairs Committee, Summary of Committee Report, S.B. 413 (1987). Enacted as Maryland Code (1982, 1987 Repl.Vol.), § 24–209 of the Health–General Article (HG),[3] Chapter 351 of the 1987 Laws required an "establishment with 20 or more employees that ha[d] a toilet facility for its employees ... [to] allow the customer to use the facility," when a public rest room was not available. At the same time, the statute responded to other concerns earlier expressed by the statute's opponents. First, the statute narrowly defined a "customer" as an individual who

> (1) Suffers from Crohn's Disease, ulcerative colitis or any other inflammatory bowel disease, or any other medical condition that requires immediate access to a toilet facility; or

> (2) Utilizes an ostomy device.

HG § 24–209(a). Then, for the first time, this bill incorporated the provisions with which we are primarily concerned in the instant case in then subsection (d) of HG § 24–209. That

---

**3.** Though originally enacted in 1987 as § 11–209 of the Health–Environmental Article, during that year, the State Legislature transferred, *inter alia*, Title 11 of the Health–Environmental Article (renamed the Environment Article that same year) to the Health–General Article and renumbered it Title 24. *See* 1987 Md.Laws, Chap. 306.

prior section shielded the business as well as its employees from civil liability

for any act or omission in allowing a customer to use a toilet facility that is not a public toilet facility,[4] if:

(1) The act or omission is not willful or one of gross negligence;

(2) The act or omission occurs in an area of the retail establishment that is not accessible to the public; and

(3) The act or omission results in an injury to or death of the customer or anyone other than an employee accompanying the customer.

While the bill mandated that a business owner allow access to special-need customers under certain circumstances, thus exposing those businesses to significant liability, it further granted them immunity, in the absence of willful or gross negligence.

In 1989, the immunity of HG § 24–209 was "expand[ed] . . . to retail establishments of any size which voluntarily allow[ed] any customer to use an employee toilet facility." Senate Judicial Proceedings Committee, Floor Report, H.B. 162 (1989). House Bill 162[5] fashioned two separate and independent sections, HG § 24–209 and HG § 24–210, out of what had theretofore been one section, namely HG § 24–209. In moving subsection (d) of HG § 24–209, House Bill 162 created the new HG § 24–210, providing that it applied not only to employee facilities but also to all nonpublic facilities and separated the provisions conferring immunity from those requiring a retailer to provide certain special-need customers access to rest rooms maintained primarily for employee use. This separation was largely in response to the Legislature's pur-

---

4. Notably, HG § 24–209(c) provided that employee rest rooms were "not to be considered a public restroom," for purposes of that provision.

5. "House Bill 162 was introduced in the 1988 Session as House Bill 110 and received an unfavorable report from the Senate Judicial Proceedings Committee." Senate Judicial Proceedings Committee, Bill Analysis, H.B. 162 (1989).

pose and intent to "expand[ ] the circumstances under which retail establishments are immune from civil liability ... and generally relating to the use of nonpublic restrooms in retail establishments." 1989 Md.Laws, Chap. 387. The remaining sections of HG § 24–209, *i.e.*, subsections (a), (b), and (c), remained substantively unchanged in the separation. On the other hand, the scope of those customers to which the provisions of HG § 24–209 had applied was significantly altered to include any person "lawfully on the premises of a retail establishment." HG § 24–210(a).

We note that House Bill 162 was captioned: *Retail Establishments—Toilet Facilities—Immunity from Civil Liability.* When HG § 24–210 was first codified, however, the codifiers entitled it, "Same—Civil Liability of Retail Establishment or Employee." By inserting "Same," the codifiers were saying that HG § 24–210 related to, and incorporated, the provisions of the next preceding section—HG § 24–209. This use of "Same," as relating back to HG § 24–209, appeared to limit the applicability of *both* sections to employee facilities. In using that titling, the codifiers erred. While House Bill 162 reenacted HG § 24–209 in respect to employee rest rooms and the special class of customers it had previously affected, it also added a completely separate, new section, HG § 24–210, that did not limit its provisions solely to "employee" rest rooms. It created immunity in respect to the use of *any* nonpublic facility. Both sections shared the same legislative history until House Bill 162 was enacted; that bill created wholly separate statutory sections. To simplify the difference, HG § 24–209 only applies when employee facilities are used by those suffering from certain disorders. HG § 24–210 applies in all other instances. There is no evidence that appellant qualifies under HG § 24–209, as she does not suffer from the maladies therein described; her suit, of necessity, was based on her use pursuant to HG § 24–210, as later restated in CJ § 5–378.

In 1990, the Legislature, consolidating related immunity statutes in House Bill 206, repealed and reenacted the sub-

stance of HG § 24–210 as CJ § 5–378.[6] 1990 Md.Laws, Chap. 546. The consolidation parroted the language of HG § 24–210, but included no title. Because, however, the codifiers had improperly titled HG § 24–210, as we have previously indicated, they similarly improperly titled CJ § 5–378 to indicate that the section applied to a customer's use of employee facilities. HG § 24–210 had never been so limited and neither is CJ § 5–378. Thus, our primary concern, as we indicate elsewhere, is the public or private nature of a facility.

Prior to the consolidation, HG § 24–210, with the titling error omitted, provided:

**Civil liability of retail establishment or employee.**

(a) *"Customer" defined.*—In this section, "customer" means an individual who is lawfully on the premises of a retail establishment.

(b) *In general.*—A retail establishment and any employee of a retail establishment are not civilly liable for any act or omission in allowing a customer, including a customer as defined in § 24–209 of this subtitle, to use a toilet facility that is not a public toilet facility, if:

(1) The act or omission is not willful or one of gross negligence;

(2) The act or omission occurs in an area of the retail establishment that is not accessible to the public; and

(3) The act or omission results in an injury to or death of the customer or anyone other than an employee accompanying the customer.

(c) *Employee toilet not public restroom.*—Notwithstanding any provision of this section, an employee toilet facility is not to be considered a public restroom.

That same language is now found in CJ § 5–378. It is that statute and that language that we apply in resolving the instant case.

---

**6.** HG § 24–210 was reenacted, but it merely refers to the immunity provided in CJ § 5–378.

## DISCUSSION

### THE STATUTE

It is clear that the original statute's passage would not have been possible had it not been modified to afford retail businesses partial immunity from liability for injuries sustained by patrons utilizing their rest room facilities. Our review of the legislative history has provided us with important insights, which illustrate an increase in the scope of the current statutes from the original statute.[7] Not only have the statutes been amended to apply to all retail establishments, but the kind of customers to whom the statutes apply has also been expanded. Originally applying solely to those suffering from various medical disorders, the statute currently encompasses any person "lawfully on the premises of a retail establishment." CJ § 5–378(a).

More important, however, is the evolution of the statutory language, particularly that which specifically sets forth the requirement of accessibility. It demonstrates a move away from requiring access for a limited class of persons solely to rest rooms maintained for employees, HG § 24–209, to include any permissive use of facilities that are not available for general, unrestricted use by the general public. As it stands, CJ § 5–378(b) requires compliance in respect to facilities that are "not . . . public toilet facilit[ies]." In so doing, the current formulation clearly contemplates that not every nonpublic facility to which a customer will be directed will be an employee facility. Thus, what had begun in 1986 (in Senate Bill 516) as an attempt to mandate that all retail businesses allow all customers unlimited access to their rest rooms, without regard to their liability therefor, evolved into two statutes that currently provide that certain customers with specified physical disorders *must* be allowed access to employee rest rooms, HG § 24–209, and that all others *may be* allowed access to any nonpublic facility. HG § 24–210 and now CJ § 5–378. In either event, the retail establishment will be immune from suit

---

7. The first "bill" did not become a statute.

in respect to such use of its private and/or employee rest rooms so long as its actions are not willful or grossly negligent, CJ § 5–378(b)(1).

It is appellant's position that the rest room is, in fact, one available for use by the general public, thus stripping appellee of any immunity. Appellee approaches the issue from a different angle, claiming that appellant failed to introduce sufficient evidence to establish that the rest room was not an employee facility. The appropriate distinction under the statute that applies in the instant matter, CJ § 5–378, is between *public* and *private* facilities. The parties, however, distinguished between *public* and *employee* rest rooms. Within this statutory framework, subsection (c) of CJ § 5–378, regarding employee facilities, functions merely as a predetermination of the status of employees' facilities: "Notwithstanding any provision of this section, an employee facility is not to be considered a public restroom." Employee rest rooms, no matter where situated, are never to be considered "public." This confusion may have resulted from the erroneous titling of the statutory sections by the codifiers. Thus, as to employee facilities, the immunity provisions will always apply, even if they are located in the public area of a retail establishment. In other words, while an employee rest room will always be a private, *i.e.,* nonpublic, rest room, it cannot be said that a private rest room will always be an employee rest room. That said, there still remains some question as to what exactly differentiates a public facility from a private one.

## "PUBLIC" DEFINED

The indices of many reference works are replete with numerous references to various types of public entitlements and functions, but there are few references to conceptual definitions of the term "public." We shall set forth a number of those references:

Generally speaking, a public place is a place or area where the public, as a whole, has a right to be. It is usually

a place accessible or visible to all members of the community.

C.L. Feinstock, Annotation, *Location of Offense as "Public" within Requirement of Enactments Against Drunkenness,* 8 A.L.R.3d 930, 932 n. 1 (1966).

Moreover, a public place is one where the public has a right to be.

*Id.* at 934.

Generally, a "public dance" has been defined by ordinance as any dance to which the public is admitted, and which is held for profit, direct or indirect, and a "dance hall" as "any place where ... public dancing is permitted." 4 Am.Jur.2d *Amusements and Exhibitions* § 3 (1962).

A public cemetery is one used by the general community, a neighborhood, or a church, while a private cemetery is one used only by a family or a small portion of the community. However, the test of whether a cemetery is public or private is public user, and not who has the title thereto. Thus, a cemetery, though privately owned or maintained, may be deemed a public cemetery if it is open ... to the use of the public for the burial of the dead.

14 Am.Jur.2d *Cemeteries* § 2 (1964) (footnotes omitted). In respect to the applicability of traffic regulations, private ways are considered public if there is the "right to unrestricted use by the public ...; and where the public has no unrestricted use as to a private way, such traffic regulations do not apply." 7A Am.Jur.2d *Automobiles and Highway Traffic* § 205 (1980) (footnote omitted).

There are many areas where narrow definitions of the term "public" can be found, including "public offices," "public bodies," "public servants," "public disclosure," "public markets," and "public lands." Because of the character of the use in the case *sub judice,* however, they are not relevant to our inquiry. We do note, however, those definitions that share some degree of compatibility with the circumstances presented by the instant appeal.

In determining the applicability of a drunk driving statute, the Supreme Court of Vermont, in *State v. Paquette,* 151 Vt. 631, 563 A.2d 632 (1989), stated, "The key is not 'ownership of the highway, but whether it is open to the general circulation of the public.'" 563 A.2d at 635 (quoting *State v. Trucott,* 145 Vt. 274, 487 A.2d 149 (1984)) (emphasis omitted). The Superior Court of Pennsylvania, in *Commonwealth v. McFadden,* 377 Pa.Super. 454, 547 A.2d 774, 776 (1988), in reversing McFadden's conviction, determined that there was insufficient proof that the driveway in a mobile home park was open to the public. The applicable Pennsylvania statute applied on a "highway" or a "trafficway." The court stated: "The question . . . is whether . . . the drive into the trailer park may be considered a trafficway." The court noted that the statute defined a "private road" or "driveway" as "[a] way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission." 547 A.2d at 777.

The concept of "public" in connection with public drunkenness has inspired several interpretations of the term. The Supreme Court of California, in *In re Zorn,* 59 Cal.2d 650, 30 Cal.Rptr. 811, 812, 381 P.2d 635, 636 (1963), opined:

There is likewise no merit in the contention that . . . a barber shop, [is] . . . not a public place[;] . . . "public" has been defined as "Common to all or many; general; open to common use," and "Open to common, or general use, participation, enjoyment, etc.; as, a *public* place, tax, or meeting."

The Supreme Court of Arkansas looked to foreign cases for a definition: "Webster's . . . defines 'public' as 'a place accessible or visible to all members of a community.' . . . [*See* ] *Byrom v. State* [126 Tex.Crim. 640], 73 S.W.2d 854 [ (1934) ], where the court said that a public place is 'a place where all persons are entitled to be.'" *Berry v. City of Springdale,* 238 Ark. 328, 381 S.W.2d 745, 747 (1964). An Oklahoma appellate court, in *Stateham v. State,* 95 Okla.Crim. 232, 243 P.2d 743, 744 (1952), approved an instruction that stated:

"A 'Public Place' is any place which is open to general public, and upon use of which by the general public there is no limitation...."

In *Dym v. Merit Oil Corp.*, 130 Conn. 585, 36 A.2d 276 (1944), the oil company operated a gasoline service station, at which an office and store room were maintained in a separate building. Attached to that building were rest rooms "which are entered by outside doors, one marked 'Ladies' and the other 'Men.'" 36 A.2d at 277. There was absolutely no restriction of access to the facilities. A regular patron, who had stopped so that a passenger could use the rest room facilities at the station, directed her to the rest room. In route, she fell into a grease pit, injured herself, and sued the oil company for negligence for failing to set up a barrier around the grease pit. Notably, the rest room doors were not locked and there was no indication that access to either the area around the grease pit or the rest room was then restricted. The court noted:

The defendant concedes, as it must, that had the accident occurred at a time when the station was in full operation the plaintiff would have been an invitee. She was a guest of one of its patrons *and the toilets were patently there to be used by such persons.*

*Dym,* 36 A.2d at 278 (emphasis added).

In the case *sub judice,* there is absolutely no evidence that the rest room was "patently" there to be used by patrons of the supermarket. It was intended to be locked, it was in an area from which patrons were generally prohibited access, special permission or directions had to be sought in order to use it, and there is no evidence that any signs indicating its location were readily apparent in the public areas of the store (if in fact, there were any such signs anywhere, given that appellant could not find the rest room she sought to use).

In *Dym,* in finding that the facilities there were designed to be, and were thereafter intended to be, used as public rest rooms, the Connecticut court noted that the patron was entitled to consider the rest room to be available for the public

because " 'it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used.' "  *Dym*, 36 A.2d at 278 (quoting *Guilford v. Yale Univ.*, 128 Conn. 449, 23 A.2d 917, 919 (1942)).  Further, the court noted:

[The facilities] were incident to its business.  They were there as an added inducement to patronage.  No sign was conspicuously displayed at the entrance to the premises indicating that the station was closed and that motorists were not to enter.  The fact that the toilets were left unlocked at night might be found to indicate a purpose that they could be used at any time by persons who patronize the station.

*Id.* (citation omitted).  In the case at bar, "No Admittance" signs were conspicuously displayed at the entrance to the rear of the store, and the rest room was intended to be locked. See *Smith v. Wiley–Hall Motors, Inc.*, 184 Va. 49, 34 S.E.2d 233, 234 (1945) (A patron of an open service station, looking for a rest room, opened an unmarked door, stepped through, and fell into a grease pit.  The court found no duty on the part of the owner stating, "[T]he duty owed to an invitee is coextensive with the invitation . . .[;] the bid to the reception room . . . does not include a reconnoiter which would take one to the grease pit, and this is so, even if he wanted his car greased."); *People v. Guynn*, 33 Ill.App.3d 736, 338 N.E.2d 239 (1975) (whether the word "elsewhere" in the phrase "upon the highways and elsewhere throughout the State" included semi-public property); *Stinson v. Columbus & Chicago Motor Freight, Inc.*, 125 N.E.2d 881 (Ohio Ct.App.1952) (involving the applicable statutory duty in respect to a collision occurring in a lane in a private shopping center); *Silvestro v. Walz*, 222 Ind. 163, 51 N.E.2d 629 (1943) (" '[T]he owner of the premises should anticipate what is usually . . . done by an invitee. . . .' " (quoting *Loney v. Laramie Auto Co.*, 36 Wyo. 339, 255 P. 350, 353 (1927))).

But see *Dickau v. Rafala*, 141 Conn. 121, 104 A.2d 214 (1954), in which the plaintiff was patronizing the grocery store of the defendant.  There was a rest room in a nonpublic area

of the store, which she sought permission to use. She was told, "Right that way in back of you." In route to the rest room, she took a wrong turn into a storeroom and then into a doorway and fell into the basement, injuring herself. There was no sign in the store indicating the location of the rest room. It was intended for employee use, but patrons were generally permitted to use it as well. Because customers were permitted and accustomed to use the rest rooms, the court found that it was thus within the scope of the invitation extended to customers. It went on to note:

> The present case is therefore distinguishable from cases where, in an isolated instance, permission to use a private toilet was extended to an individual customer.

104 A.2d at 216.

We further note the definitions of the term "public" as recognized in various dictionaries. The term has been defined as "[o]pen to all," "open to common use," "not limited or restricted to any particular class of the community." *Black's Law Dictionary* 642 (Abr. 5th ed. 1983). In setting forth the meaning of matters that are public in nature, *Black's* differentiates them from any others using the term "private." Indeed, a "public place" is defined as one "to which the general public has a right to resort; not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private." *Id.* at 644. The words "openly ... as opposed to private" are used in defining the term "publicly." *Id.* at 643. *The Random House Dictionary of the English Language* 1162 (Unabr.1983 ed.) proffers these relevant definitions:

> for ... the community as a whole ... open to all the people ... open to the public generally ... open to the view or knowledge of all.

*Webster's Third New International Dictionary* 1836 (Unabr.1961 ed.) reads:

> accessible to or shared by all members of the community ... for the benefit of the people as a whole ... exposed to general view.

*Webster's Seventh New Collegiate Dictionary* 690 (1972 ed.) and *Merriam–Webster's Collegiate Dictionary* 944 (10th ed. 1993) define "public" as:

> accessible to or shared by all members of the community ... exposed to general view ... open.

We thus summarize the various definitions of the term "public" that we have discussed: A place open to the general circulation of the public; a place where all persons have a right to go; a place open to all; a place to which the general public has a right to resort; a place accessible or visible to all members of the public; a place used by the general community; where all persons are entitled to be; a place patently to be used by members of the public; a place designed for public use; a place exposed to public view; and the right to unrestricted use by the public.

■ A review of these definitions, the cases we have cited, and the history of the statutes at issue leads us to formulate a more concise definition of "public" as it relates to the characterization of rest rooms within the parameter of the applicable statute. We hold that a public rest room is one that is (1) generally unlocked [8] and devoid of other barriers to its entry, (2) available for the unrestricted use of the general public, (3) situated in an area of the retail establishment to which the general public is invited to participate in the primary activities of the establishment, (4) duly identifiable as a public rest room by way of signs, such as "Rest Rooms," "Mens," "Ladies," in open view in the retail areas of the store, and (5) for which no permission need be obtained before use. With this in mind, we turn to the case *sub judice.*

## THE INSTANT APPEAL

■ Both on brief and at argument, appellant contends that appellee failed to meet its burden of proving the applicability of the immunity granted by CJ § 5–378, citing *Yost v. Early,*

---

8. Some public rest rooms in areas of danger may occasionally be locked for security reasons.

**198**

87 Md.App. 364, 380, 589 A.2d 1291, *cert. denied,* 324 Md. 123, 596 A.2d 628 (1991), in support thereof. We disagree. To meet its burden, Safeway must have presented facts that supported its claim that the facility at issue is not a public rest room. We hold that it did. Uncontradicted evidence adduced at trial clearly established the following: Customers sought permission or at least directions to utilize the rest room while in the store; a key, located at the front office, was generally needed to gain entrance to the facility; [9] "No Admittance" signs delineated the area not accessible to the store's patrons and the rest room at issue was in that area; no signs in the retail portion of the store indicated the location of the rest room; and appellant herself saw the need either to request whether she could use a rest room on the premises or to request directions to the facility. Moreover, as we have indicated, the facility was in a storage or stockroom area where no retail sales activity occurred. Additionally, it was clearly in the nonretail area of the store where management could not normally be expected to take special precautions for safe transit by patrons invited to the retail sales area of the store. Each of these facts militate against characterizing the facility as public in nature. They run counter to the precepts that compel the characterization of something as public. Thus, the facility to which appellant was directed on the day in question cannot reasonably be characterized as a public rest room available for use by the general public. In the context of this case, whether the rest room at issue was an employee rest room, or whether it was occasionally used by employees, is not significant. The trial court simply determined that it was not a "public" rest room. Indeed, it is the purpose of the statute to encourage use by its provision of immunity in the first instance. Moreover, the fact that the store, with some regu-

9. It appears that the door was not kept locked at all times. While appellant did not obtain the key, she never made it to the rest room, so there is no evidence as to whether entry to the facility required use of the key. There was also some evidence that the key, on occasion, may have been located in the stockroom area near the rest room at issue.

larity,[10] directed patrons to that rest room does not render the facility accessible within the meaning of the statute. There was no substantial evidence, other than the use that the statute was intended to facilitate, that supported appellant's contention that the facility was a public rest room. Moreover, the statute cannot be logically interpreted to mean that a store's permissive ("allowing") use, pursuant to the statute, renders the rest room "accessible" and, thus, the statute inapplicable. We, therefore, reject, as a legal oxymoron, appellant's contention that the very use the statute was designed to promote negates the immunity granted thereby.

In pertinent part, the court stated, in granting appellee's two motions for judgment:

[Y]ou recall that during the course of the trial at the end of the plaintiff's case and the defendant's case, I reserved ruling on the defendant's motion for judgment. And that's precisely why I did, because I took a long look at that statute. And there was not much help . . . in the precedent. It's state law. And it seems to me it was designed exactly for this situation.

The trial court's ruling expressed its belief that the rest room at issue was private and, because the statute confers immunity on a business that permits use of its private rest rooms, appellant was not entitled to recovery. We agree. Moreover, there was insufficient evidence that appellee acted, or failed to act, in a willful or grossly negligent manner. The trial court was correct.

---

**10.** Appellant notes that there was evidence that the facility might have been used upwards of 2,000 times a year by patrons of the store. At first impression, this would appear to be a sizeable number. Upon closer examination, however, the numbers translate into approximately five to six uses per day. Given the propensity of supermarkets to remain open up to twelve, sixteen, or even twenty-four hours a day, the figure quoted by appellant is further reduced to one use every three to five hours. Clearly, a genuinely "public" restroom, situate in the active retail area of a supermarket, would be in use exponentially more often. The minimal use of the rest room at issue, *i.e.*, five times a day, is, contrary to appellant's argument, simply further evidence of its non-public nature.

## CONCLUSION

Under the statute, employee rest room facilities, those provided for the sole use and convenience of employees, cannot be public facilities. CJ § 5–378(c). Other types of facilities may, or may not, be public depending upon the facts of a specific case. That determination will most often be made by an evaluation of such factors as ease of access, ease of entry, necessity for permission, location and signs indicating same, and barriers to entry.

In arguing its motion, appellee's trial counsel stated in respect to appellant's position:

Their argument is use, that the use of this rest room therefore made it a public rest room [and made it accessible]. And that argument defies the statute.

We agree. He continued:

And according to the statute, an employee toilet facility does not become a public toilet facility through customer use.

And to read that into the statute defies the purpose and the logic of the statute.

While the status of the rest room as an employee rest room is not determinative in the case at bar, if it were relevant, we would agree that appellant's position in respect to it would defy logic.

Judge Melbourne then opined:

I took a long look at that statute.... It's state law. And it seems to me it was designed exactly for this situation.

... [A]nd I'm going to grant a judgment in favor of the defendant. And let's see what our Appellate Courts do with that statute.

This opinion, we trust, will satisfy Judge Melbourne's curiosity.

We hold that occasional use by customers of an otherwise private rest room does not render it a public rest room. To hold otherwise would defeat the purpose of the statute and would be counter to the public policy established thereby, which was to encourage retail establishments to permit cus-

tomers to use private bathrooms by conferring partial immunity on them when such use is permitted.

We shall affirm.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**