697 A.2d 851

Carrie HOUSTON,

v.

SAFEWAY STORES, INC.

No. 64, Sept. Term, 1996.

Court of Appeals of Maryland.

July 30, 1997.

Reconsideration Denied Sept. 5, 1997.

504

Lawrence S. Lapidus (Jack A. Gold, Karp, Frosh, Lapidus & Wigodsky, P.A., on brief), Bethesda, for Petitioner.

L. Palmer Foret (Craig L. Davitian, Foret & Thompson, on brief), Washington, DC, for Respondent.

Ralph J. Savarese (Roger A. Klein, Howrey & Simon, on brief), Washington, DC, Amicus Curiae.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

CHASANOW, Judge.

The question presented in this appeal is whether the Court of Special Appeals erred in affirming the trial court's entry of a judgment notwithstanding the verdict and in construing Maryland Code (1974, 1995 Repl.Vol.), Courts & Judicial Proceedings Article, § 5–378 (hereinafter "§ 5–378"). We shall address both issues simultaneously, and, for the reasons set forth below, we shall reverse the judgment of the intermediate appellate court.

## I.

On September 16, 1992, Petitioner, Carrie Houston, was shopping at a Safeway grocery store in Lanham, Maryland. She asked a Safeway employee whether there was a restroom available for her use. She was instructed to walk to the back of the retail floor and to pass through a set of double doors. Behind the double doors is a storeroom or warehouse area. While searching for the restroom in the warehouse area, Petitioner slipped on a piece of twine commonly used to strap milk or juice containers onto pallets for shipment. She fell to the floor and suffered an injury that required the amputation of one toe. *Houston v. Safeway*, 109 Md.App. 177, 181, 674 A.2d 87, 89 (1996).

Petitioner filed suit against Safeway alleging that it breached the applicable standard of care by failing to maintain its premises in a safe condition. Safeway argued that it was immune from civil liability pursuant to § 5–378. That section, entitled "[Immunity]—Customer use of employee toilet facility in retail establishment," states:

"(a) *Definition.*—In this section 'customer' means an individual who is lawfully on the premises of a retail establishment.

(b) *In general.*—A retail establishment and any employee of a retail establishment are not civilly liable for any act or omission in allowing a customer, including a customer as defined in § 24–209 of the Health–General Article, to use a toilet facility that is not a public toilet facility, if the act or omission:

(1) Is not willful or grossly negligent;

(2) Occurs in an area of the retail establishment that is not accessible to the public; and

(3) Results in an injury to or death of the customer or any individual other than an employee accompanying the customer.

(c) *Employee toilet not public restroom.*—Notwithstanding any provision of this section, an employee toilet facility is not to be considered a public restroom."

The case was bifurcated, and a jury trial on the issue of liability was held in the Circuit Court for Prince George's County before the Honorable Audrey E. Melbourne. A bench conference was held early in the proceedings to determine the issues that each party's experts would be permitted to address. The judge stated that the experts would be allowed to testify as to the applicable standard of care but would not be allowed to express an opinion as to whether the restroom was public. The judge stated at this time and again later in the trial that whether the restroom was public was an issue properly left to the decision of the jury, without the aid of opinions by "experts."

A great deal of conflicting evidence was presented at trial on the question of whether the restroom at issue should be considered a "public" restroom. Mr. James Nelson, Safeway's expert in safe building design, materials, and maintenance, testified that the Lanham Safeway is divided into two areas, the retail area and the support area. In the retail area, where items are displayed for purchase, customers are free to move

about without restriction. Mr. Nelson testified that the retail area is well-lit by a "drop light ceiling system," and the floors are covered with vinyl tile. The walls in this area are finished and painted, and they have "graphics identifying where produce and deli and various items are." There are no restrooms for customer use in the retail area.

Behind the retail space, through the aforementioned double doors, is the support area, where shipments are received and stored until ready to be displayed in the retail area. Safeway employees are solely responsible for maintaining this space. The support area differs in look and feel from the retail area. The floors are sealed concrete, and the ceiling is unfinished. The toilet that Petitioner was directed to is located in the support area, on the first floor, approximately ninety feet from the double doors that separate the area from the retail floor. The facility is labeled "restroom," and it is the only toilet facility in the store that is equipped for use by handicapped persons.

Safeway has two other toilet facilities, located on the second floor of the support area, labeled "men's" and "ladies," respectively. The evidence presented at trial suggests that Safeway employees generally use these restrooms instead of the first-floor restroom. Adjacent to the second-floor restroom is an employee lounge with a television, a videocassette recorder, vending machines, and lockers available for employee use. The second-floor restrooms are kept unlocked when not in use. Customers and members of the public were never directed to the second-floor restrooms; rather they were directed exclusively to the first-floor restroom.

Whether customers are routinely permitted to pass through the double doors and use the first-floor restroom without permission was disputed at trial. Safeway contends that anyone who wishes to use the first-floor restroom is required to ask permission first. This contention is supported by evidence that there was a sign posted at all times on the double doors that read "no admittance." There is some evidence in the record, however, that the doors were some-

times kept open and, if so, that customers could not read the sign from the retail floor. Mr. Lawrence Dinoff, Petitioner's expert in building design and maintenance, testified that he visited Safeway after Petitioner filed this action and asked an employee if he could use a restroom in the store. He had no cart or basket and in no way attempted to identify himself as a customer. The employee instructed Mr. Dinoff to pass through the double doors and look for the restroom. Mr. Dinoff testified that on the day of his visit, the double doors were blocked open by boxes and the "no admittance" sign was not at all visible from the retail floor. Safeway acknowledges that there is no clear evidence in the record as to whether the double doors were blocked open on the day Petitioner was injured or as to how often they were blocked open generally.

Petitioner contends that customers need not ask permission to use the restroom at all but that they may have to ask where the restroom is *located*. If someone is familiar with the store, Petitioner argues, he or she can pass through the double doors and use the restroom without asking for permission first. Petitioner's daughter, Angela Houston, testified that she used the first-floor restroom many times, although it is not clear from the record whether she ever asked permission after the first time that she used the facility. Ms. Houston went into the support area on the day of Petitioner's fall, but whether Ms. Houston asked for permission on that day is also unclear from the record.

Safeway's corporate designee, Laurie Palmer, testified that customers must ask for permission to use the first-floor restroom because it is always kept locked and the key is kept in the front of the store. Conflicting evidence was presented, however, that suggested that the restroom door was kept unlocked or, if it were locked, that the key was readily available to customers. Petitioner testified that when she asked to use a restroom, she was instructed to go directly through the double doors; she was never instructed to go to the front of the store to obtain a key. Petitioner also testified that after she fell down, she was taken to the restroom by a store employee, and Petitioner never saw the employee use a

key to open the door. Ms. Houston testified that she had used the first-floor restroom approximately twenty times since the 1970s. She also testified that when she used this restroom, the door was kept locked, but the key was hanging on a hook next to the door. Ms. Houston identified in a photograph the nail upon which she claimed the key had been hung.

There is no evidence that anyone who asked to use a restroom was ever denied access. Ms. Palmer testified that approximately four customers or members of the public were directed to the first-floor restroom during every shift. The jury also learned that at Ms. Palmer's deposition, she estimated that "four or five" customers were directed to this restroom on a daily basis. Petitioner argues that by multiplying these figures by several employees and several shifts, the number of customers who use the first-floor restroom at Safeway annually could be estimated to be as high as 3,000.

Safeway employees are allowed to use the first-floor restroom, and Ms. Palmer testified that she "sometimes" used it. The evidence presented, however, suggested that employees used this facility on a less frequent basis than customers. For instance, Ms. Palmer testified that, on the day Petitioner was injured, Ms. Palmer used the second-floor restroom even though she had been near the first-floor restroom approximately twelve times. She agreed when questioned that an employee might prefer the second-floor restroom to the first-floor restroom because the second-floor restrooms were not locked.

Safeway moved for judgment at the close of Petitioner's case and again at the close of all evidence, arguing primarily that it was immune from liability for simple negligence under § 5–378. The court reserved its decision on each motion. Eventually, the court declined to rule on the motions altogether and submitted the case to the jury. Using a special verdict form prepared by Safeway, the jury made the following findings of fact: (1) that the restroom was not an employee toilet facility, (2) that the restroom was a public toilet facility, (3)

that Safeway was negligent, and (4) that Petitioner was not contributorily negligent.

Safeway moved for judgment notwithstanding the verdict, for a new trial, to alter or amend the judgment, and to vacate the judgment. Safeway argued that § 5–378 was intended to cover the circumstances of the present case and that Petitioner presented insufficient evidence that the restroom in question was a public, rather than an employee, toilet. After a hearing, the court stated that it would rule on the Motion for Judgment on which it had previously reserved its decision and that it would grant Safeway's Motion for Judgment N.O.V., explaining that § 5–378 "was designed exactly for this situation." The court apparently decided, as a matter of law, that the first-floor restroom was not public. The court did not discuss the requirements of willful conduct, gross negligence, or accessibility as required by § 5–378(b)(1) and (2).

Petitioner timely appealed to the Court of Special Appeals, which affirmed the ruling of the trial court. *Houston,* 109 Md.App. at 181, 674 A.2d at 88. The court held that the restroom at issue is private, not public, and stated: "[section 5–378] confers immunity on a business that permits use of its private rest rooms...." *Houston,* 109 Md.App. at 199, 674 A.2d at 97. This Court granted Petitioner's petition for a writ of certiorari to review the judgment of the Court of Special Appeals.

## II.

Prior to 1987, Maryland retailers were not required to allow their customers access to any restroom on the premises that was maintained solely for use by employees and not for use by the public. As a result of this policy, many citizens who required immediate access to a restroom because of problems such as inflammatory bowel disease sometimes suffered great embarrassment and inconvenience when they were denied access to restrooms in stores. Thus, in 1987, the General Assembly enacted a statute that allowed persons with certain medical conditions to use certain retailers' non-public toilets

upon request. Md.Code (1982, 1987 Repl.Vol.), Health–General Art., § 24–209. The goals of the statute were to help customers who required immediate access to a restroom for medical reasons while limiting retailers' liability to those customers if they were injured while using the restroom because of the retailers' ordinary negligence. Chapter 351 of the Acts of 1987. As enacted,[1] the statute read:

**"Use of retail establishment's employee restrooms by certain customers.**

(a) *'Customer' defined.*—In this section 'customer' means an individual who:

(1) Suffers from Crohn's disease, ulcerative colitis or any other inflammatory bowel disease, or any other medical condition that requires immediate access to a toilet facility; or

(2) Utilizes an ostomy device.

(b) *In general.*—At the request of a customer, and where a public restroom is not readily available, each retail establishment with 20 or more employees that has a toilet facility for its employees shall allow the customer to use the facility.

(c) *Employee toilet not public restroom.*—Notwithstanding any provision of this section, an employee toilet facility is not to be considered a public restroom.

(d) *Civil liability of retail establishment or employee.*—A retail establishment and any employee of a retail establishment are not civilly liable for any act or omission in allowing a customer to use a toilet facility that is not a public toilet facility, if:

(1) The act or omission is not willful or one of gross negligence;

(2) The act or omission occurs in an area of the retail establishment that is not accessible to the public; and

---

1. The bill was originally enacted as § 11–209 of the Health–Environmental Article. Chapter 351 of the Acts of 1987. Title 11 of the Health–Environmental Article was transferred, without substantive change, to Title 24 of the Health–General Article later that year. Ch. 306 of the Acts of 1987.

(3) The act or omission results in an injury to or death of the customer or anyone other than an employee accompanying the customer."

Md.Code (1982, 1987 Repl.Vol.), Health–General Art., § 24–209.

Thus, if a Maryland retail establishment had a restroom that was available exclusively to employees, it was considered a non-public or employee toilet.[2] The statute required the establishment, if it employed twenty or more persons, to allow customers with the medical conditions specified in subsection (a) to use that non-public or employee restroom if there were no public restroom readily available for the customers' use. The statute provided, however, that if the customer were injured while doing so, the statute would shield the establishment from liability if the establishment met the conditions of subsection (d). If a customer, even a "customer" as defined by subsection (a), were injured while using a public restroom, however, the immunities in subsection (d) would not protect the retailer. It was for this reason that subsection (c) of the statute explicitly stated that no amount of use pursuant to subsection (b) by customers with specified medical problems would transform a non-public or employee facility into a public facility.

In 1989, the General Assembly enacted a statute that extended the limited immunity provisions to cover retail establishments of all sizes whenever they allowed *any* customer, regardless of medical condition, access to a non-public or employee toilet facility. Md.Code (1982, 1987 Repl.Vol., 1989 Cum.Supp.), Health–General Art., § 24–210 (hereinafter "§ 24–210"). Section 24–210 stated:

**"Same—Civil liability of retail establishment or employee.**

---

**2.** Section 24–209 used the phrases "not a public toilet facility" and "employee toilet facility" interchangeably. Maryland Code (1982, 1987 Repl.Vol.), Health–General Article, § 24–209(b),(c),(d).

(a) *'Customer' defined.*—In this section, 'customer' means an individual who is lawfully on the premises of a retail establishment.

(b) *In general.*—A retail establishment and any employee of a retail establishment are not civilly liable for any act or omission in allowing a customer, including a customer as defined in § 24–209 of this subtitle, to use a toilet facility that is not a public toilet facility, if:

(1) The act or omission is not willful or one of gross negligence;

(2) The act or omission occurs in an area of the retail establishment that is not accessible to the public; and

(3) The act or omission results in an injury to or death of the customer or anyone other than an employee accompanying the customer.[3]

(c) *Employee toilet not public restroom.*—Notwithstanding any provision of this section, an employee toilet facility is not to be considered a public restroom."

The requirement that persons suffering from certain medical conditions be permitted to use certain retail establishments' restrooms on demand did not change. Md.Code (1982, 1987

---

**3.** The limited immunity provisions had been removed from § 24–209 and transferred to § 24–210 without substantive change. Thus, after 1989, § 24–209 read:

"**Use of retail establishment's employee restrooms by certain customers—In general.**
(a) *'Customer' defined.*—In this section, 'customer' means an individual who:
(1) Suffers from Crohn's disease, ulcerative colitis or any other inflammatory bowel disease, or any other medical condition that requires immediate access to a toilet facility; or
(2) Utilizes an ostomy device.
(b) *In general.*—At the request of a customer, and where a public restroom is not readily available, each retail establishment with 20 or more employees that has a toilet facility for its employees shall allow the customer to use the facility.
(c) *Employee toilet not public restroom.*—Notwithstanding any provision of this section, an employee toilet facility is not to be considered a public restroom."

Repl.Vol., 1989 Cum.Supp.), Health–General Art., § 24–209 (hereinafter "§ 24–209").

Thus, under that statutory scheme, the decision to allow a customer to use an establishment's non-public or employee restroom was voluntary, under § 24–210, unless the customer suffered from a medical condition listed in § 24–209(a), in which case the customer was entitled to use the non-public or employee toilet as specified in § 24–209(b). In either case, and under either statute, if a customer were injured while using the non-public or employee restroom, the retailer would be immune from liability for ordinary negligence if the retailer met the three conditions of § 24–210(b).

This was the state of the law until 1990, when all of Maryland's immunity provisions were consolidated in the Courts and Judicial Proceedings Article. Section 24–210 was repealed and reenacted without substantive change as § 5–378.[4] *See* Ch. 546 of the Acts of 1990. Section 24–209 remained, unchanged, in the Health–General Article.

## III.

Although the issue under consideration in the trial court was whether the facility at issue was a public toilet or an employee toilet, the intermediate appellate court, based neither on the reasoning of the trial court nor any argument of the parties, determined that the issue to be resolved was whether the first-floor restroom was a public facility or a *private facility. Houston,* 109 Md.App. at 191, 674 A.2d at 93. The Court of Special Appeals stated:

---

4. The title of the statute was changed, however, to: "**[Immunity]— Customer use of employee toilet facility in retail establishment.**" Md. Code (1974, 1989 Repl.Vol., 1990 Supp.), Courts & Judicial Proceedings Art., § 5–378.

Section 24–210 was reenacted in 1990, stating: "A retail establishment and any employee of a retail establishment shall have the immunity from liability described under § 5–378 of the Courts and Judicial Proceedings Article." Md.Code (1982, 1996 Repl.Vol.), Health–General Art., § 24–210.

"While House Bill 162 reenacted HG § 24–209 in respect to employee rest rooms and the special class of customers it had previously affected, it also added a completely separate, new section, HG § 24–210, that did not limit its provisions solely to 'employee' rest rooms. It created immunity in respect to the use of *any* nonpublic facility. Both sections shared the same legislative history until House Bill 162 was enacted; that bill created wholly separate statutory sections. To simplify the difference, HG § 24–209 only applies when employee facilities are used by those suffering from certain disorders. HG § 24–210 applies in all other instances." (Emphasis added)(italics in original).

*Houston,* 109 Md.App. at 188, 674 A.2d at 92. In the underlined section of the passage, the court seems to imply that the legislature retained the distinction between public and employee toilets in the 1989 reenactment of § 24–209, but that the legislature changed the distinction to public versus private toilets when it enacted § 24–210.

There is no evidence that the legislature intended the terms "not a public toilet facility" and "employee toilet facility" to be interpreted differently in § 24–210 than they were in the original § 24–209. Section 24–210(b), which refers to a restroom that is "not a public toilet facility," is nearly identical to subsection (d) of the original § 24–209.[5] Section 24–210(c) and § 24–209(c), which refer to "employee toilet facilit[ies]," are identically worded. Thus, it seems that the legislature intended the terms "non-public" and "employee" to be used interchangeably in § 24–210, just as they were in the original § 24–209.

█ A restroom that can be characterized as "non-public" or "employee," however, might also accurately be characterized as "private" under either statute. Thus, when considering the nature of a restroom for the purposes of either statute, the terms "private restroom," "non-public restroom," and "em-

---

**5.** The only difference in the language is the phrase "including a customer as defined in § 24–209 of this subtitle," which was added to § 24–210(b) so that it would apply to § 24–209 by reference.

ployee restroom" can be used interchangeably in most cases. For example, in a retail establishment that employs five people, if there is a restroom that is located in a back room, and if members of the public are rarely allowed to use it, the facility could accurately be called a non-public restroom, an employee restroom, or a private restroom. If a customer is permitted to use this restroom one day and is injured as a result of the retail establishment's ordinary negligence, the establishment will be immune from liability under § 5–378(b).

There may be some cases, however, in which a restroom may be most accurately described as "private." For example, if an additional fact is added to the hypothetical scenario described above—that the restroom belongs exclusively to the store manager and is not available for use by any other employee—this facility might most accurately be described as a private restroom. In either hypothetical situation, however, the paramount consideration for the purposes of § 5–378(b) would be that the restroom is *not public.*

The Court of Special Appeals formulated a definition of "public," as that term is used in § 5–378, to be used by courts to determine whether a particular facility is public as a matter of law. *Houston,* 109 Md.App. at 197, 674 A.2d at 96. The court examined more than ten definitions of the word "public," *Houston,* 109 Md.App. at 191–97, 674 A.2d at 93–96, which the court summarized as follows:

> "A place open to the general circulation of the public; a place where all persons have a right to go; a place open to all; a place to which the general public has a right to resort; a place accessible or visible to all members of the public; a place used by the general community; where all persons are entitled to be; a place patently to be used by members of the public; a place designed for public use; a place exposed to public view; and the right to unrestricted use by the public."

*Houston,* 109 Md.App. at 197, 674 A.2d at 96. Rather than allow a trier of fact to rely on its understanding of the word "public," which could be as broad and varied as the many

definitions listed, however, the intermediate appellate court formulated a specific definition of "public" for the purposes of § 5–378. *Id.* Under the court's definition, a public restroom is one that is:

> "(1) generally unlocked and devoid of other barriers to its entry, (2) available for the unrestricted use of the general public, (3) situated in an area of the retail establishment to which the general public is invited to participate in the primary activities of the establishment, (4) duly identifiable as a public rest room by way of signs, such as 'Rest Rooms,' 'Mens,' 'Ladies,' in open view in the retail areas of the store, and (5) for which no permission need be obtained before use." (Footnote omitted).

*Id.*

█ We do not believe that the legislature intended such a precise and limited definition of "public" for the purposes of § 5–378. A court should be able to consider the totality of the surrounding circumstances in any individual case to determine whether a particular restroom is public. Thus, although the five factors set forth by the Court of Special Appeals are relevant to the determination of whether a given restroom is public and, in many cases, may even be determinative, a court should not exclude from consideration any other facts that may also bear on the determination in an individual case.

A finding that a toilet facility is not public, however, is not enough, in itself, to declare an establishment immune from liability for ordinary negligence. Under § 5–378, if a customer dies or is injured while using a non-public toilet, a retail establishment will be immune from civil liability only if the remaining requirements of subsection (b) have been met. Subsection (b)(1) requires that the act or omission that caused the customer's injury not be willful or grossly negligent. Subsection (b)(2) requires that the injury occur "in an area of the retail establishment that is not accessible to the public." The trial court, when granting Safeway's Motion for Judgment N.O.V., failed to make any findings with regard to these requirements. The Court of Special Appeals, however, at-

tempted to address the additional requirements. With regard to subsection (b)(1) the court stated: "there was insufficient evidence that [Safeway] acted, or failed to act, in a willful or grossly negligent manner." *Houston*, 109 Md.App. at 199, 674 A.2d at 97; *see* § 5–378(b)(1). With regard to subsection (b)(2), the court explained that "the fact that the store, with some regularity, directed patrons to that rest room does not render the facility accessible within the meaning of the statute," *Houston*, 109 Md.App. at 198–99, 674 A.2d at 97 (footnote omitted), and that "the statute cannot be logically interpreted to mean that a store's permissive ('allowing') use, pursuant to the statute, renders the rest room 'accessible' and, thus, the statute inapplicable." *Houston*, 109 Md.App. at 199, 674 A.2d at 97.

We agree with the intermediate appellate court's conclusions concerning Safeway's status with regard to § 5–378(b). We discuss the accessibility requirement of subsection (b)(2) in greater detail below, however, to aid Maryland retail establishments and future litigants. Patrons of Maryland retail establishments are business invitees. *See Giant Food v. Mitchell*, 334 Md. 633, 640 A.2d 1134 (1994); *Pellicot v. Keene*, 181 Md. 135, 28 A.2d 826 (1942). "Storekeepers owe their invitees a duty of ordinary care to maintain their premises in a reasonably safe condition." *Giant Food*, 334 Md. at 636, 640 A.2d at 1135. The duty of care owed to invitees extends only to the parts of the store reserved for customers, however, and not to places where customers are not invited. *See Pellicot*, 181 Md. at 139, 28 A.2d at 828 (holding duty of care did not extend behind store's counters).

On a store's retail floor, customers are clearly business invitees. Commonly, a store also has a stock room where shipments of new merchandise are received. If a store generally does not permit customers into its stock room, the duty of care that the store owes its customers as invitees, similarly, does not extend into the stock room. If a customer were to enter the stock room without permission, the customer would acquire the status of a "mere licensee[ ] to whom the store-

keeper owes no duty for [the customer's] protection." *Id.* Under these circumstances, the stock room is not "accessible" to the public, as that term is used in § 5–378.

■ Often, the stock room will have a restroom for its employees' use. Even if the store's policy generally is to forbid customers to enter the stock room, the store must allow a customer with a medical condition specified in § 24–209(a) to enter the stock room in order to reach the restroom. Because the stock room may not be maintained in as safe a condition as the retail floor, it is possible that a customer may suffer an injury in the stock room. Section 5–378 was written to protect an establishment in such a case.

Under these circumstances, if the customer were injured while in the stock room, the establishment would be shielded from liability for ordinary negligence under § 5–378. The stock room, not usually accessible to public, would not become accessible merely because the store complied with § 24–209 and allowed a customer into the stock room. Similarly, the stock room would not become accessible if the store permitted a customer without one of the medical conditions specified in § 24–209(a) to use the restroom pursuant to § 5–378. If an area is not accessible to the public under ordinary circumstances, permissive access pursuant to § 24–209 or § 5–378 will not make it so.

■ On the other hand, if the customer is injured in an area that *is* accessible to the public, § 5–378 will not shield the establishment from liability for its ordinary negligence. Suppose that a customer on the retail floor asks to use the store's restroom, is given permission to do so, and is directed to the stock room. If the customer, on his or her way to the stock room, slips and falls on a piece of twine *while still on the retail floor*, § 5–378 will not shield the establishment from liability for its ordinary negligence. When on a retail floor a customer is an invitee, even if the customer is making his or her way toward a private restroom. Section 5–378 does not abrogate the preexisting duty that storekeepers owe to their invitees to maintain in a reasonably safe condition areas to which the

invitation extends. *See Pellicot,* 181 Md. at 139, 28 A.2d at 828.

In the present case, Petitioner was injured while traveling to a restroom in Safeway's stock room, but the restroom, and by implication the access to the restroom, was found by a jury to be public. A separate finding of gross negligence, willfulness, and accessibility under § 5–378(b) is required only when a toilet facility has first been found to be non-public, employee, or private.

## IV.

If a court reserves its ruling on a motion for judgment that is made at the close of evidence, the motion "becomes a motion for judgment notwithstanding the verdict if the verdict is against the moving party...." Maryland Rule 2–532(b). When reviewing a judgment n.o.v., "this Court must resolve all conflicts in the evidence in favor of the plaintiff and must assume the truth of all evidence and inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recover—that is, the evidence must be viewed in the light most favorable to the plaintiff." *Smith v. Bernfeld,* 226 Md. 400, 405, 174 A.2d 53, 55 (1961) (citations omitted). We have explained that: "As with respect to a judgment n.o.v., * * * [i]f there is any legally relevant and competent evidence, however slight, from which a rational mind could infer a fact in issue, then a trial court would be invading the province of the jury by declaring a directed verdict." *Impala Platinum v. Impala Sales,* 283 Md. 296, 328, 389 A.2d 887, 905–06 (1978). Stated another way: "Only where reasonable minds cannot differ in the conclusions to be drawn from the evidence, after it has been viewed in the light most favorable to the plaintiff, does the issue in question become one of law for the court and not of fact for the jury." *Pickett v. Haislip,* 73 Md.App. 89, 98, 533 A.2d 287, 291 (1987), *cert. denied,* 311 Md. 719, 537 A.2d 273 (1988). If judgment n.o.v. has been granted in error, the reviewing court may vacate the erroneous judgment of the trial court and reinstate the verdict of the jury. Md. Rule 2–532(f)(1); *see McSlarrow*

*v. Walker*, 56 Md.App. 151, 161, 467 A.2d 196, 201 (1983), *cert. denied*, 299 Md. 137, 472 A.2d 1000 (1984).

## V.

When a customer is injured while attempting to use a toilet in a retail establishment in Maryland, whether that customer had a right to use the toilet pursuant to § 24–209 or was merely permitted to use the toilet pursuant to § 5–378, the analysis is the same; the first question that a court must consider is: Is the toilet facility public? If the toilet is public, § 5–378(b) is inapplicable. If the toilet is not public, then § 5–378(b) may shield the retail establishment or its employees from liability for simple negligence.

■ We think, and Petitioner concedes, that whether a toilet facility is public or non-public will be clear in most circumstances. When the material facts of the case, and the inferences to be drawn from those facts, are undisputed, the nature of the toilet facility can be determined as a matter of law. In such a circumstance, it is wholly proper for a trial court to declare the facility to be public or non-public as a matter of law.

■ In the present case, however, the facts that are material to the determination of whether the restroom in question is public or private are vigorously disputed. The parties presented a great deal of conflicting evidence, including: (1) that the "no admittance" sign on the double doors was clearly visible to consumers versus that the sign is not visible when the double doors are blocked open, as is sometimes done; (2) that persons who knew the location of the toilet were required to ask permission before using it versus that Petitioner's daughter may have used the toilet in the past without asking for permission; (3) that the door to the first-floor toilet was always kept locked versus that it was not locked on the day that Petitioner was injured; (4) that if the door to the first-floor restroom was kept locked the key was kept in the front of the store versus that Petitioner's daughter always found the key hanging right next to the door; (5) that very few people

were ever directed to the first-floor restroom versus that as many as 3,000 people annually were so directed; and (6) that employees commonly used the first-floor restroom versus that they rarely used it.

In light of the dispute surrounding the material facts of the case, it was appropriate for the trial judge to decline to rule on Safeway's Motions for Judgment and to let the jury resolve the factual issue. The jurors, with the aid of the special verdict sheet and instructions that were not objected to by either party, weighed the evidence and found that the restroom was not an employee toilet facility, but, rather, that it was a public toilet facility. The jury also found that Safeway was negligent and that Petitioner was not contributorily negligent.

The court should have been bound by the jury's findings unless the evidence was insufficient to support them. *See Dennard v. Green*, 335 Md. 305, 322–23, 643 A.2d 422, 431 (1994). After viewing the evidence in the light most favorable to Petitioner, we hold that there was sufficient evidence to sustain the jury's finding that the first-floor restroom was a public restroom. The first-floor restroom was the only one on the premises that was equipped for use by handicapped persons. There were no toilets available for customer use in the retail space, where customers may circulate without restriction. Whenever a customer needed a restroom, he or she would be directed to the first-floor restroom, and no one who asked to use a restroom in Safeway was ever denied. Up to 3,000 customers annually were directed to the restroom in question. Mr. Dinoff, who did not even attempt to present himself as a customer, was directed to this restroom. Ms. Houston had used the first-floor restroom approximately twenty times since the 1970s. If a customer knew the location of the restroom, he or she did not have to ask permission to use it. The door to the restroom was not kept locked, or, if it was kept locked, the key was hanging alongside the door. The double doors leading to the restroom, which bore a sign reading "no admittance," were sometimes blocked open so that customers were unable to read the sign. Accepting these

facts as true and resolving all reasonable inferences that can be drawn from these facts in favor of Petitioner, as we must, we conclude that there was enough evidence upon which a rational jury could find the restroom at issue to be public.

## VI.

We hold that the Court of Special Appeals erred in its judgment affirming the trial court's grant of Safeway's Motion for Judgment N.O.V. Section 5–378 grants limited immunity to Maryland retail establishments whose customers are injured using the establishments' non-public restrooms. In the present case, whether the restroom at issue is "non-public" could not be resolved as a matter of law because the facts material to the determination were disputed. The question of fact, therefore, was posited to the jury, which found the restroom to be public. The trial court's decision to set aside the jury's verdict and to declare as a matter of law that the restroom was not public was improper, as was the judgment of the intermediate appellate court affirming the trial court's decision.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND THE CASE IS REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THAT COURT WITH DIRECTIONS TO REINSTATE THE JURY VERDICTS AND ENTER JUDGMENTS THEREON. (SEE MD. RULE 2–532(f)(1)(A)). COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*

RAKER, J., dissents.

RAKER, Judge, dissenting.

I would affirm the judgment of the Court of Special Appeals affirming the trial court's grant of Safeway's Motion for Judgment N.O.V. The trial court correctly ruled that, as a matter of law, this restroom in question, located at least ninety feet inside the stock area, behind doors marked "No Admittance," was not a public facility.

The facts that the majority finds to be in dispute, in my view, are not material facts. These facts largely have no bearing on whether a restroom ought to be considered a public or nonpublic facility. The majority contends that whether persons who know where the restroom is located must nevertheless ask permission to use the restroom is a disputed fact bearing on the status of the restroom. A business's decision to require customers to ask permission to use the facilities does not change the fundamental characteristics of the restroom as public or nonpublic. Furthermore, the location or existence of a key to unlock the restroom door is not material to the determination of whether the facility is public or private. Many restrooms that are clearly public, such as those at many gas stations, nevertheless require a key. Finally, the number of people which Safeway directs to the restroom in a given time period is not material to the restroom's status. Heavy use of a nonpublic restroom does not convert that restroom into a public facility just as infrequent use of a public facility cannot make it nonpublic. Were it otherwise, businesses would have an incentive to limit sharply the use of its restroom to avoid converting it from nonpublic to public and losing the immunity conferred by the statute.

For the above stated reasons, I dissent.